**UNITED STATES of America,
Plaintiff,**

v.

**ST. PAUL MERCURY INDEMNITY
COMPANY, a corporation,
Defendant.**

**Civ. A. No. 10–54.**

United States District Court
D. Nebraska, Lincoln Division.

June 30, 1955.

Donald R. Ross, U. S. Atty., Omaha, Neb., and Harry W. Shackelford, Asst. U. S. Atty., Omaha, Neb., for plaintiff.

Guy C. Chambers, Lincoln, Neb. (Chambers, Holland & Groth, Lincoln, Neb.), for defendant.

C. C. Fraizer and T. J. Fraizer, Lincoln, Neb. (Fraizer & Fraizer, Lincoln, Neb.), as amici curiae.

DELEHANT, District Judge.

Plaintiff brought this action to recover judgment against defendant, an insurance corporation organized under the laws of Delaware with its principal office in St. Paul, Minnesota, and authorized to do business in Nebraska. It claimed as the express assignee of the insured under a so-called "family poliomyelitis expense policy" issued on August 16, 1952 in favor of Gray Kinnier, of Minden, Nebraska, who, during the term of the policy became ill with acute poliomyelitis, spinal type, and thereafter, being an honorably discharged veteran of World War II, applied for admission to and treatment in Veterans' Administration hospital at Lincoln, Nebraska, and was granted and received such admission and treatment, on condition of his execution of an assignment to Administrator of Veterans' Affairs of "all claims, demands, entitlements, judgments, administrative awards, and the proceeds thereof, and all causes of action," which he had or might thereafter have, "by reason of any liability of third parties entitling [him] to hospital care or medical or surgical treatment, or to reimbursement for all or part of the cost of any such; or recovery of damages for all or part thereof," which assignment he made. The defendant, by answer, admitted its own incorporation and engagement in business, its issuance of the policy of insurance alleged in the complaint, which, it alleged, provided that defendant would pay to the insured a sum not exceeding $5,000 to apply upon "expenses actually incurred by the insured" and not otherwise; and admitted that Kinnier was an honorably discharged veteran of World War II; but denied all other averments of the complaint.

Counsel appearing as amici curiae have not served or filed any pleadings which contribute to the making of the issues; but with the court's permission,

have participated in the trial and submission upon briefs of the action.

The case has been tried to the court without a jury and extensive and competent briefs have been furnished by counsel. With the exception of certain undisputed testimony by Gray Kinnier, and some exhibits in the nature of statistical data, the evidence is presented in the way of a written stipulation. The facts are now set out. And, first, these facts are found in harmony with the stipulation:

1. The defendant is, and at all material times was, a duly organized corporation engaged in the insurance business in Nebraska. On August 16, 1952 in consideration of its regular premium, which was paid to it, the defendant issued and delivered to Gray Kinnier of Minden, Nebraska, identified herein as the Insured, a written policy of insurance characterized as "Family Poliomyelitis Expense Policy" from which certain excerpts will shortly be incorporated herein.

2. On or about August 23, 1952 the Insured became afflicted with definitely diagnosed poliomyelitis, which first manifested itself after the policy date, and he was thereupon taken to Lincoln General Hospital, Lincoln, Nebraska, (not to be confused with Veterans' Administration hospital at Lincoln, Nebraska) for treatment and care.

3. Insured is and at all material times has been a veteran of World War II, honorably discharged from the military service of the United States as a naval aviation cadet on October 4, 1945.

4. During the period from August 23, 1952 until about October 6, 1952, the Insured was paralyzed to such an extent that he was physically unable to write or to transact any business. Because of such condition, his wife, Mary Kinnier, executed and signed an application bearing date September 5, 1952, for hospital treatment or domiciliary care, from which excerpts will be set out later in these findings. She also signed and delivered to Veterans' Administration a printed form of power of attorney and agreement from which excerpts are set out in these findings of fact, which also bears date September 5, 1952. On or about October 7, 1952, the Insured, being then able to do so, also signed such power of attorney and agreement.

5. The defendant received due and timely notice of the illness of the Insured and on and prior to May 24, 1954 paid to him the sum of $981.08 as reimbursement under said policy for expenses incurred for hospitalization and treatment to that date other than that furnished him by Veterans' Administration; and has made further payments subsequent to such date, of which specific finding is made later herein.

6. On September 9, 1952, Veterans' Administration caused to be mailed to defendant written notice that the Insured had been hospitalized in Veterans' Administration hospital for treatment and domiciliary care and that he had executed the power of attorney and agreement above referred to. Defendant received such notification in due course of mail.

7. On October 7, 1952, Veterans' Administration caused to be mailed to defendant a duplicate original of the foregoing power of attorney and agreement and defendant received the same at its principal office in due course of post.

8. From September 5, 1952 to August 24, 1953, except for a brief period when he was furloughed, the Insured was a patient in the Veterans' Administration hospital at Lincoln, Nebraska and was given therein necessary treatment and domiciliary care. Demands were made by and in behalf of Veterans' Administration upon defendant for payment of certain charges made by Veterans' Administration for hospitalization, care, treatment and appliances furnished the Insured by Veterans' Administration at its hospital and such demands were in accordance with the regular and usual rates, fees and prices promulgated by Veterans' Administration for such hospitalization, care, treatments and ap-

pliances as were furnished to the Insured.

9. Although no forms for proof of loss were furnished by defendant to plaintiff, nor was any proof requested, as charges for hospitalization and treatment were made, Veterans' Administration mailed to defendant itemized statements covering the charges for board, room, medical examinations and treatment, medicines, nursing, physical and occupational therapy, braces and appliances furnished to the Insured, all of which statements were timely received by the defendant. The total amount of such statements for hospitalization, treatment, braces and appliances, inclusive of board, room, medical examinations, medicines, nursing and physical and occupational therapy is $3,796.69, no part of which has been paid. All of the services and appliances included in such statements were necessary and proper in the treatment of the Insured and the amounts of the charges therefor were and are fair and reasonable.

10. Veterans' Administration Bulletin No. 10A–306 published by the Administration under date of June 16, 1952 was in full force and effect during the period September 5, 1952 to March 19, 1953, and, as amended by change "1" published under date of March 19, 1953 was in full force and effect during the period March 19, 1953 to August 24, 1953. The bulletin serves the declared purpose, according to its own language, of (a) establishing a standard procedure, within the Administration, for billing for services furnished to veterans hospitalized for treatment of a condition not attributable to military or naval service, and who it is believed may be entitled to hospital care or medical or surgical treatment or to reimbursement for all or part of the cost thereof, by reason of statutory, contractual, or other relationships with third parties; and (b) insuring that proper charges are made for services rendered by the Administration to the extent of the amount for which the third parties are or will become liable, in the same manner that reimbursement would have been made by insurers under the provisions of insurance policies, or by insurers or others by reason of other statutory or contractual relationships or agreements, if hospitalization were furnished by nonadministration, proprietary hospitals. The bulletin, of which a copy constitutes a part of the evidence in the case, contains not merely an outline of the bases of the charges to be made in such circumstances but, in considerable detail, of the form and manner of instruments to be executed and notices to be given incident to them. It is not deemed necessary to quote from the bulletin in detail in this ruling. It seems unquestionably to have been followed and complied with in the handling of the Insured's account with Veterans' Administration hospital.

Excerpts are taken from the Policy as follows:

(a) Its coverage was thus declared:

"Saint Paul Mercury Indemnity Company * * * (herein called the Company) hereby insures the person named as the Insured head of the family on page 4 of this policy (herein called the Insured) and agrees to pay the insured the benefits herein provided toward the expenses actually incurred by the Insured because of Poliomyelitis suffered by the Insured or by any of the Family Members covered under this Policy, subject to the provisions, exceptions, limitations and reductions herein contained, as follows:

### Part I

### For Poliomyelitis

"Upon receipt of due proof that the Insured or any of the Family Members covered under this Policy shall have become afflicted with definitely diagnosed Poliomyelitis which first manifested itself after the Policy Date stated on page 4 hereof, or if the person afflicted is a Family Member after the date of the insurance of the Insured with respect to

such afflicted Family Member, and for which required treatment was first received during the period this Policy is in force with respect to such person, the Company will pay the Insured the benefits set forth in Part II of this Policy in the amount of the expenses actually incurred by the Insured for the required treatment received therefor by the Insured or such Family Member within three (3) years from the date of the first such treatment, but not exceeding for each person covered hereunder the aggregate sum of Five Thousand ($5,000.00) Dollars."

## Part II

### Schedule of Benefits

"The benefits payable under this Policy shall be in accordance with the provisions and limitations of Part I hereof for expenses actually incurred by the Insured for:

"A. Hospital Care—Hospital Room and Board and all services and supplies which hospitals ordinarily furnish, including use of operating room and laboratory examinations.

"B. Medical Care—The services of legally qualified physicians, physiotherapists (including Kenny treatments if available) and osteopaths.

"C. Nursing Care—The services of registered graduate nurse(s), except relatives or members of Insured's family.

"D. Surgical Care—The services of legally qualified surgeons.

"E. Drugs and Medicines—All necessary drugs and medicines required in the treatment of Poliomyelitis.

"F. Ambulance Service—Ambulance service to and from the hospital, but not to exceed Sixty ($60.00) Dollars.

"G. Blood Transfusions—Blood Transfusions, including blood cost.

"H. X-ray and Other Therapy Procedure—X-ray and other therapy procedure, including both diagnosis and treatment.

"I. Rental of Iron Lung and Rental or Purchase of Necessary Braces, Crutches and Wheel Chairs —Rental of an iron lung or similar mechanical apparatus or equipment and rental or purchase of necessary braces, crutches and wheel chairs.

"J. Transportation—Initial transportation, other than provided under 'F' of this Part, of the afflicted person to a hospital or sanitarium, qualified to provide special treatment, in another locality when recommended by the attending legally qualified physician or surgeon."

Among the Standard Provisions of the policy was the following:

"11. All indemnities of this policy are payable to the Insured".

(b) Among its Miscellaneous Provisions were these:

"A. No assignment of interest under this policy shall be binding upon the Company unless and until the original or a duplicate thereof is filed at its Principal Office. The Company does not assume any responsibility for the validity of an assignment.

"D. The Insured and any Family Member covered under this Policy shall have free choice of hospital and legally practicing physician or surgeon and the doctor-patient relationship shall be maintained at all times."

(c) The name and address of insured head of the family was indicated on page 4 of the policy as:

"Gray Kinnier
Minden, Nebraska"

The foregoing application for hospital treatment or domiciliary care identified the enlistment and discharge dates of the Insured, and his residence, and place and character of employment.

To the question: "Are you entitled to hospital care by membership in a lodge, society, community group treatment plan, etc.?", it answered "Yes" and added the explanatory statement: "St. Paul Polio Policy". To each of the questions, "Are you financially able to pay necessary expenses of hospital or domiciliary care"? and "Are you able to pay transportation on reporting for admission and on discharge?" it answered, "No".

The power of attorney and agreement identified St. Paul Mercury Indemnity Company, St. Paul, Minnesota, as the Insured's insurer and gave the correct symbol and number of the foregoing policy. The body of that power of attorney and agreement is set out in a footnote.[1]

From evidence received in addition to the stipulation, the following facts are found:

Since April 1, 1954 the Insured has worked as purchasing agent at Lincoln Air Base. At the time of trial he was

1. "For a valuable consideration I hereby assign to the Administrator of Veterans Affairs and his successors in such Office, to the extent hereinafter indicated, all claims, demands, entitlements, judgments, administrative awards, and the proceeds thereof, and all causes of action which I now have, and which I may have hereafter, by reason of any liability of third parties entitling me to hospital care, or medical or surgical treatment, or to reimbursement for all or part of the cost of any such; or recovery of damages for all or part thereof; including but not limited to claims, or causes of action,

"(a) for damages by reason of negligence or other legal wrong;

"(b) based on contract, partially enumerated here as (1) membership in a union, fraternal or other organization; (2) rights under a group hospitalization plan or under any insurance contract or plan which provides for payment or reimbursement for the cost of medical or hospital care,

"(c) based on statute, State or Federal, and regulations promulgated pursuant thereto, partially enumerated here as (1) 'workmen's compensation' statutes; (2) 'employer's liability' statutes; (3) right to 'maintenance and cure' in admiralty.

"The extent of this assignment is an amount equal to the total reasonable charges for hospital care, medical, surgical, and clinical treatment, or any of them, including ambulance transportation and other auxiliary services received by me. This assignment does not include any sums to which I am entitled on a fixed basis which do not depend upon the amount incurred or disbursed by me for such care; (sometimes referred to in the insurance business as a right to indemnity).

"The various provisions of this assignment are separable. If requisite to its validity in any jurisdiction with respect to a judgment or award the above assignment shall become effective only upon entry of such judgment or award. The execution hereof is without prejudice to any lien in favor of the party providing me hospital or other care, on any such money, and any judgment, which I recover, or am or become entitled to recover, which lien arises by virtue of statute, or of contract, including this contract, (which shall be construed as granting such a lien, and not as an election, or waiver thereof); and I further covenant that any such rights of mine are and shall be for the benefit of said Administrator to the extent of the reasonable charges for the care furnished me.

I hereby irrevocably appoint the Administrator of Veterans Affairs and his subordinates authorized by him, my attorneys-in-fact in the premises, to do all acts, matters and things deemed necessary or desirable by any such authorized person, with full power and authority in my name, but at the cost, risk and charge, and for the sole benefit of said Administrator, his successors in such Office, and his or their assigns, to sue for, or compromise, and to recover and receive all or part of the amount hereby assigned; and irrespective of assignment, to collect and disburse such funds in my behalf; and to give releases for the same; but no such action shall limit or prejudice my right to recover for my own benefit all sums in excess of those amounts representing said reasonable charges for said care and treatment, or other sums to which I may be entitled.

"I hereby authorize the Veterans Administration and its employees to disclose to said insurer, or other party against whom liability is asserted, or his or their attorneys, such information concerning me as the responsible representatives of the Veterans Administration consider appropriate in connection with the subject matter hereof."

living in Lincoln. He is still disabled and has to use a wheel chair for movement from place to place. After his withdrawal from Veterans' Administration hospital and continuing through the time of the trial he underwent therapy treatments at Wesleyan University under a Dr. Peterson.

Defendant made payment by drafts to him of the cost of post hospitalization treatments, (not included in the figure $981.08, supra) as follows:

| Dates of Drafts | Amounts |
| --- | --- |
| June 16, 1954 | $54.00 |
| July 19, 1954 | 58.50 |
| August 13, 1954 | 58.50 |
| September 17, 1954 | 51.23 |
| Total | $222.23 |

It thus appears that defendant has paid out to the Insured the full amount by which its maximum policy coverage in respect of the Insured personally exceeds the claim of plaintiff. The payment of plaintiff's demand in full would, therefore, exhaust the benefits to which the Insured would be entitled under the policy, in any event, on account of his own illness.

Meanwhile, the Insured is still disabled and stands in need at least of a new wheel chair for locomotion, and of repairs to his current wheel chair, and of a new brace. And, of course, the extent of his prospective needs in the way of treatments, therapy, and appliances can not be intelligently forecast.

It will at once be inferred from the foregoing facts, especially as they emerge from the stipulation, and it is made clear by the briefs, that what is being litigated here is not the amount of recovery in behalf of plaintiff, but rather its right to any recovery at all. Upon the record plaintiff is either to be denied any judgment or to be awarded judgment in the sum of $3,796.69. For the choice between those dispositions the court must have recourse primarily to the policy of insurance out of which, if at all, liability of defendant arises, and

to the statute and regulations under which the Insured was admitted to, and treated in, Veterans' Administration hospital. The policy is of primary significance for if it affords the Insured a right of recovery, such right seems to have been validly assigned to, or for the benefit of, plaintiff; but if it does not afford such right of recovery to the Insured, he was powerless to enlarge the defendant's liability or to confer on plaintiff rights which he did not himself possess.

It was provided by the policy, upon conditions whose occurrence has been established, that the defendant will pay the Insured the benefits set forth in the policy "in the amount of the expenses actually incurred by the Insured for the required treatment" not exceeding $5,000 for each person. The critical phrase is "expenses actually incurred by the Insured". If, under the facts, Kinnier actually incurred the expenses sued for, the defendant was under the obligation to pay the amount of them to him. The phrase needs to be understood.

"Expense", in the English language, is taken directly from the Latin, "expensus-a-um" which is the perfect passive participle of the verb, "expendo, expendere". The verb, in its infinitive form, signifies "to hang out, to put out, to weigh out, to lay out, or to pay out". And in relation to money it means simply "to pay out". "Incurred", in English, is a participal adjective whose source is the verb, "incur". And this verb is directly derived from the Latin verb, "incurro, incurrere", a composite of the prefix "in" and the simple verb, "curro, currere", signifying "to hasten, to run, or to hurry". So, "incurrere" as the present active infinitive of the composite verb means "to run into or to hasten into". One, therefore, has "incurred expenses" when he has "run into an obligation to pay out money". The word "actually" serves, as the court thinks, to emphasize the necessity that to fix a liability upon the defendant there must have been a *real and substantial,* not a fictitious, ostensible or a merely

philosophical "running into the obligation to pay". So much for the merely derivative sense of the phrase, which, however, is vitally important in its comprehension.

Legal application of the term, "expenses incurred" or "incurred expenses" is to like effect. Thus, it is held that expenses are not "incurred" during a taxable year, under an Internal Revenue Act, unless the legal obligation to pay them has arisen. Stern-Slegman-Prins Co. v. Commissioner of Internal Revenue, 8 Cir., 79 F.2d 289; American Hotels Corporation v. Commissioner of Internal Revenue, 2 Cir., 134 F.2d 817; Bauer Brothers Co. v. Commissioner of Internal Revenue, 6 Cir., 46 F.2d 874; Desco Corporation v. United States, D.C. Del., 55 F.2d 411. The court is aware of the determinative impact of the language of the pertinent statutes upon the opinions just cited. But the necessity for an obligation to pay as an element of "incurred expenses" is also emphasized in other relations. State v. Moore, 192 Or. 39, 233 P.2d 253; Schmitt v. Emery, 215 Minn. 288, 9 N.W.2d 777.

The inquiry, then, proceeds a step further, to the problem whether under the applicable statutes, regulations and facts Kinnier actually incurred the obligation to pay the expenses whose amount plaintiff seeks in this suit to recover from defendant.

Both parties grant that the statute chiefly involved is Title 38 U.S.C.A. § 706, which follows:

"In addition to the pensions provided in this chapter the Administrator of Veterans' Affairs is authorized under such limitations as he may prescribe, and within the limits of existing Veterans' Administration facilities, to furnish to men discharged from the Army, Air Force, Navy, Marine Corps, or Coast Guard for disabilities incurred in line of duty or to those in receipt of pension for service-connected disability, and to veterans of any war, including the Boxer Rebellion and the Philippine Insurrection, domiciliary care where they are suffering with permanent disabilities, tuberculosis, or neuropsychiatric ailments· and medical and hospital treatment for diseases or injuries: Provided, That any veteran of any war who was not dishonorably discharged, suffering from disability, disease or defect, who is in need of hospitalization or domiciliary care and is unable to defray the necessary expenses therefor (including transportation to and from the Veterans' Administration facility) shall be furnished necessary hospitalization or domiciliary care (including transportation) in any Veterans' Administration facility, within the limitations existing in such facilities, irrespective of whether the ·disability, disease, or defect was due to service. The statement under oath of the applicant on such form as may be prescribed by the Administrator of Veterans' Affairs shall be accepted as sufficient evidence of inability to defray necessary expenses."

By regulation professing to rest in part upon the foregoing section of the statute, the Administrator has provided, Title 38 C.F.R. Section 17.48(d), 1952 pocket parts, that:

"(d) Persons hospitalized pursuant to § 17.47(c) (1) or (d) (1) to (4), inclusive, who it is believed may be entitled to hospital care or medical or surgical treatment or to reimbursement for all or part of the cost thereof, by reason of statutory, contractual, or other relationships with third parties, including those liable for damages by reason of negligence or other legal wrong, will not be furnished hospital treatment without charge therefor to the extent of the amount for which third parties are or will become liable, and such patients will be requested to execute appropriate assignment or other instrument which will entitle the Administrator of Veterans

Affairs—on behalf of the United States—to receive and to collect, directly or as assignee, from the third party or parties, to the extent of the amounts for which such third party is liable, the cost of such care and treatment as determined under the applicable rules and regulations, including medical fee schedules, of the Veterans Administration. The words 'by reason of statutory or contractual relationship' as used in this paragraph include, but are not limited to (1) membership in a union, fraternal or other organization, (2) rights under a group hospitalization plan, or under any insurance contract or plan which provides for payment or reimbursement for the cost of medical or hospital care, and conditions the obligation of the insurer to pay upon payment or incurrence of liability by the person covered, (3) 'workmen's compensation' or 'employers' liability' statutes, State or Federal, (4) right to 'maintenance and cure' in admiralty. Notice of the assignment will be mailed promptly to the party or parties believed to be liable. When the amount of charges is ascertained bill therefor will be mailed such party or parties. If payment is not received in due course the matter will be referred to the proper chief attorney."

With presently irrelevant variations that portion of Title 38 U.S.C.A. § 706 preceding the word, "Provided" came into the United States Code as Section 6 of the Act of March 20, 1933, Ch. 3, 48 Statutes at Large, pp. 8, 9, with amendment by the Act of June 16, 1933, Ch. 101, 48 Statutes at Large, pp. 283, 301, 302. It remained essentially unchanged thereafter until March 28, 1934 when the proviso now appearing in it was added as an amendment by the Act of March 28, 1934, Ch. 102, 48 Statutes at Large, pp. 509, 525.

It appears to be the contention of defendant that the language of Title 38 U.S.C.A. § 706 qualifying the authority .of the Administrator by the words, "under such limitations as he may prescribe" has application exclusively to that portion of the section preceding the word, "Provided"; and that the language following the word, "Provided" is unqualified, absolute and mandatory. From this premise it argues that the attempted application of the regulation reflected in Title 38 C.F.R. Section 17.48(d) last quoted, to one in the plight of Gray Kinnier is unwarranted, repugnant to the positive mandate of the statute and void.

Title 38 C.F.R. Section 17.48(d), 1952 pocket parts, was revised into the form in which it is quoted above, on November 30, 1951, 17 F.R. 12093. It manifestly had in view, and was designed to meet and provide for the administration of Title 38 U.S.C.A. § 706 in its then and present form as above quoted.

The point made against the regulation is that, while such precautions as it reflects may have been in order under the language of Title 38 U.S.C.A. § 706 as it existed before March 28, 1934, it could have no consequence in the way of altering or minimizing the mandatory extension of the proviso introduced into the section on that date. It is reasoned that in its earlier form the statute allowed the Administrator to grant "medical and hospital treatment for diseases or injuries" to "veteran[s] of any war" "under such limitations as he may prescribe", but that this allowance was only permissive and subject to the discretion of the Administrator. Thus understood, the bestowal of the benefits was subject to administrative restriction and condition. But, the argument continues, the proviso of March 28, 1934 erected a different and mandatory right, in "any veteran of any war who was not dishonorably discharged, suffering from disability, disease or defect, who is in need of hospitalization or domiciliary care and is unable to defray the necessary expenses therefor", to be furnished "necessary hospitalization or domiciliary care * * * in any Veterans'

Administration facility, within the limitations existing in such facilities, irrespective of whether the disability, disease, or defect was due to service", and required that "the statement under oath of the applicant on such form as may be prescribed by the Administrator of Veterans' Affairs shall be accepted as sufficient evidence of inability to defray necessary expenses".

This court is of the opinion that that argument is well grounded. The language of the statute itself is hardly susceptible of any other logical construction. The incorporation of the proviso, mandatory in its terms, as an addendum to, and limitation upon, the theretofore wholly permissive section of the statute, is itself significant. Not controlling, but confirmatory of the mandatory character of the proviso, is a statement in the United States Senate by one of the introducers of the amendment by which the proviso was tendered to the Congress, Congressional Record, February 27, 1934. And the same view was taken by the Attorney General of the United States in an opinion dated June 12, 1934, in which he disapproved a proposed Presidential regulation limiting beneficiaries under the proviso to veterans suffering from a permanent disability, disease or defect. 37 Opinions of the Attorney General 551. He advanced the view that such a limitation would be an invalid attempt to restrict an already provided mandatory and general benefit, and, therefore, to amend by administrative regulation a congressional act.

■ This court readily recognizes that regulations promulgated by the Administrator within the authority of the statute have the effect of law. Bernick v. Coddon, D.C.Minn., 65 F.Supp. 89; Stanger v. Glenn L. Martin Co., D.C.Md., 56 F.Supp. 163; and that, while the Administrator's interpretation of the statute with whose administration he is charged does not have the force of law

and is not inflexibly binding upon the courts, it is entitled to great weight in the judicial construction of the statute. Walling v. Peavy-Wilson Lumber Co., D.C.La., 49 F.Supp. 846; Bernhard v. Metcalfe Construction Co., D.C.Neb., 64 F.Supp. 953; Mantel v. Ralph Knight, Inc., D.C.Mo., 45 F.Supp. 372, affirmed 8 Cir., 135 F.2d 514. But that is not to say that even regulations will be given the force of law which are promulgated, not in administration but in perversion, or by way of circumvention, of the plain provisions of a statutory enactment. Nor may an administrative interpretation be accorded a like effect.

■ Somewhat pressed upon the court in this relation are Title 38 U.S.C.A. § 705, which clearly provides:

"All decisions rendered by the Administrator of Veterans' Affairs under the provisions of sections 701, 702, 703, 704, 705, 706, 707–710, 712–715, 717, 718, 720, and 721 of this title or the regulations issued pursuant thereto, shall be final and conclusive on all questions of law and fact, and no other official or court of the United States shall have jurisdiction to review by mandamus or otherwise any such decision."

and also Title 38 U.S.C.A. § 11a–2 which follows:

"Notwithstanding any other provisions of law, except as provided in sections 445 and 817 of this title, the decisions of the Administrator of Veterans' Affairs on any question of law or fact concerning a claim for benefits or payments under any Act administered by the Veterans' Administration shall be final and conclusive and no other official or any court of the United States shall have power or jurisdiction to review any such decisions."

And the court is reminded of its own recent unreported ruling in No. 23–54, Lincoln Division, Brasier v. United States, affirmed 8 Cir., 223 F.2d 762, in

which the two sections of the statutes just quoted were administered.

But the court is of the opinion that those statutory provisions are inapplicable to any issue now before it. They have to do with administrative decisions upon claims for benefits within the bestowal of Veterans' Administration, not with the exercise of such administrative authority as is involved in the promulgation of regulations or in the making of interpretative rulings. A decision within their reach was the allowance of hospitalization to Kinnier; but its review or alteration is not sought in this case. If his request for hospitalization had been rejected, that action, too, would by the cited statutory provision have been put beyond the court's correction.

The ruling in Brasier v. United States, supra, involved no problem comparable to the one now before the court.

■ The court concludes that the statute itself, Title 38 U.S.C.A. § 706, makes imperative the allowance of hospitalization and treatment to the extent of available facilities in behalf of a veteran not dishonorably discharged who, being in need of such hospitalization and treatment, makes affidavit on a prescribed Veterans' Administration form that he is unable to defray the necessary expense therefor. It is also persuaded that the Veterans' Administration is without authority by regulation to devitalize that right in a veteran, or to condition its enjoyment. Short of a determination of fraud justifying the denial of admission or termination of stay, it appears that the administration has no discretion in the matter. And even for fraud in the way of perjury it would appear that the obvious sanction is criminal prosecution.

In a sense, it is possibly though only equivocally true that, by Title 38 C.F.R., Section 17.48(d) already quoted, an intention of Veterans' Administration is evidenced to make charges limited by the supposed coverage for hospitalization and treatment of a veteran, seeking the same despite his inability to defray the necessary expense therefor, who while making the affidavit discloses his holding of a policy of insurance guaranteeing the repayment of his actually incurred expenses. It is by the regulation declared negatively that such veteran "will not be furnished hospital treatment without charge therefor to the extent of the amount for which third parties are or will become liable". Affirmatively, it is said that "when the amount of charges is ascertained bill therefor will be mailed to such party or parties." But the "party or parties" identified must be understood as the supposed insurer or insurers or other liable parties, not the patient. The simple truth is that the entire scheme reflected in the regulation contemplates an assignment of a supposed, but yet unmatured, claim under the policy against the alleged insurer or insurers, (to carry the classification no further) and thereafter the Administration's dealing in the matter of reimbursement, with the insurer or insurers, not with the stricken veteran. The court is forced to conclude in the light of the whole plan that Veterans' Administration has no purpose or intention to pursue Gray Kinnier for payment of the bill which it now seeks to recover from defendant. It has not sued him independently or joined him as the party initially and immediately liable to it for that claim. Nor is it suggested that as a matter of practice it ever institutes such actions. Indeed, the pattern of procedure reflected in the regulation, 38 C.F.R., Section 17.48(d), 1952 Pocket Parts, pretty clearly repels such a supposition, and, as has already been intimated, contemplates the direct recourse by plaintiff upon the alleged insurer. But such recourse may not be had unless Kinnier actually incurred the expense whose payment is now sought. The court is impressed with the unreality of the position that Kinnier has incurred any expense whose payment by him to plaintiff was ever demanded, insisted up-

on or even expected by plaintiff. The claim of any debt on his part for that expense is a sham or pretense. It lacks that quality of "actuality" which, the policy declares, must characterize the "incurred expense" to support a recovery by Kinnier from defendant.

It appears to this court that the Congress has not erected within the Veterans' Administration a system of commercial hospitalization open to the limited patronage of veterans of American wars. Though the term may be accepted reluctantly, it is none the less true that the Administration's hospitals are essentially charitable, within the area of their service. The charity may be understood to be available to men whose service to their country has purchased and paid for it in advance. But it is still charity in the sense that in its current provision it is not to be paid for by the recipient. Nor is the Administration supposed to sell the accommodations and services of its hospitals to eligible beneficiaries at prices proportioned to their respective abilities to pay, in descending scale from the highest reasonable price to nothing. The Administration's prime question seems to be whether an applicant is eligible to receive its hospitalization. If he is, he is entitled to receive it without price, so far as the available facilities from time to time extend.

Several considerations have been urged upon the court which are not impressive. Some of them may be mentioned briefly.

Upon the trial the court received, though with reservation touching the weight attributable to them, Exhibit 2, and certain subsidiary exhibits related to it. Together, they assume, as a study of hospital service in the United States reprinted from a May 15, 1954 issue of The Journal of the American Medical Association, to show data, among other matters, upon the numbers of beds and admissions and average "census" in Federal hospitals, including those of Veterans' Administration during a period studied, and the average length of stay per patient in general hospitals in 1951, 1952 and 1953. The conclusion advanced from the latter showing is that the average stay per patient was substantially longer in all governmental, and especially Federal governmental, hospitals than in hospitals under other ownership and management. Accepting the statistics as correct, though not deciding or finding that they are, they have no practical significance here. They might be persuasive before the Congress where in those matters laws are enacted, appropriations made and policies resolved upon. The court is hardly interested in them.

Amici Curiae in their brief set out in its entirety, and defendant's counsel quotes from, a very long letter written May 25, 1953 by Admiral J. T. Boone, Chief Medical Director for Veterans' Administration to the Honorable Alvin M. Bentley, member of Congress, and by its addressee on June 1, 1953 introduced at length into the Congressional Record. In it he discusses the Administration's problem of providing and financing the hospitalization and treatment of veterans with nonservice injuries or illness. And he offers certain legal conclusions upon it, some of which are relevant to the present issue. The court has attributed no significance to this letter. Its writer was the Administration's Chief Medical Director, not the Administrator himself or even the Solicitor for the Administration. And, besides, the adjudication of legal actions should rarely, if ever, be made to turn upon the content of an argument contained in correspondence between a bureau executive and a member of congress. On this occasion the letter may not even be supported as a part of legislative history, for it is no real part of the history of any legislation now before the court.

It is urged in argument that it ought not to be considered that the limiting provisions of 38 C.F.R., Section 17.48(d),

738

1952 pocket parts, supra, should be applied to the benefits specified in Title 38 U.S.C.A. § 706 before the proviso, many of which are for the relief of service connected maladies or injuries, but not to those mentioned in the proviso which have to do largely with maladies and injuries of non-service origin. That argument, too, though it has an acknowledged appeal, is one for the congress, not for the courts.

Consideration has been given also to an argument of plaintiff, supported in substantial measure by formal Administrative regulations and rulings, to the effect that for many years Veterans' Administration has pursued the practice of providing one or another service to certain veterans and even to nonveterans for specified charges, generally, it would seem, much less than would have been made by nongovernmental institutions. Among these may be mentioned hospital treatment for retired military personnel; emergency treatment of persons not prima facie eligible therefor; treatment of persons presumably eligible who develop not to be so; emergency treatment of ineligible personnel residing on administration field stations; and services rendered generally to persons not eligible to treatment as a matter of right. Two reflections appear to rob those undoubted facts of present persuasiveness. They seem in the main to have to do with emergency relief from humanitarian impulses, or with provisional acceptance of applicants eventually proved ineligible, or with indulgence in favor of retired service men. In this sense they are not characteristic of the Administration's dealing with the service that brings it into being. Secondly, they are unrelated to men who, of right, may claim the ministry of the Administration.

Counsel for the defendant have also advanced the thought that if recovery be now allowed against it for the full portion of its coverage yet unpaid, Kinnier will be without insurance protection for any further treatment or treatments, hospitalization or appliances required by him in his condition. It has to be remembered that he has not fully recovered from his illness and, in fact, may never fully recover. That argument has not moved the court to its present ruling. In the first place, the thought which it advances may not be allowed to control the action of the court if it be found that there is otherwise a real liability on the part of the defendant. Secondly, it is made quite clear that Kinnier has the same right to further treatment in a Veterans' Administration hospital as he had to the treatments and hospitalization which he has already received. The court is quite aware that Congress has the power to terminate any such rights, but is disposed to deal with the law as it presently stands.

█ The court has concluded that, upon the record made, and from considerations already discussed the plaintiff has not brought Kinnier within the reach of the coverage of the only policy which the defendant ever issued and upon which, if at all, liability must be fastened on it. The defendant has made no independent engagement with the plaintiff, or with any one but Kinnier. Unless, but for his assignment, Kinnier could have recovered against defendant upon the policy, plaintiff may not recover. And this court is persuaded that Kinnier could not have recovered.

Therefore, defendant is entitled to judgment of dismissal, which is duly made and given.