**UNITED STATES of America,**
**Appellant,**

v.

**ST. PAUL MERCURY INDEMNITY**
**COMPANY, a Corporation,**
**Appellee.**

**No. 15499.**

United States Court of Appeals
Eighth Circuit.

Dec. 4, 1956.

John J. Cound, Atty., Dept. of Justice, Washington, D. C. (George S. Leonard, Acting Asst. Atty. Gen., Harry W. Shackelford, U. S. Atty., Omaha, Neb., and Paul A. Sweeney, Atty., Dept. of Justice, Washington, D. C., with him on the brief), for appellant.

Guy C. Chambers, Lincoln, Neb. (Chambers, Holland, Groth, Dudgeon & Hastings, Lincoln, Neb., were on the brief), for appellee.

C. C. Fraizer, Lincoln, Neb. (T. J. Fraizer, Lincoln, Neb., with him on the brief), for amicus curiae, Health Ins. Ass'n of America.

Before GARDNER, Chief Judge, and JOHNSEN and VAN OOSTERHOUT, Circuit Judges.

JOHNSEN, Circuit Judge.

A veteran of World War II became afflicted with poliomyelitis and was admitted to a Veterans Hospital under the authority of 38 U.S.C.A. § 706. He remained as a patient for about a year and was then released.

He had insurance at the time, in the form of a "poliomyelitis expense policy", issued by an insurance company, under which the insurer agreed to pay him, in case he was striken with poliomyelitis, "for expenses actually incurred" by him in required hospital care, medical care and other enumerated treatment incidents, "the amount of the expenses actually incurred by the Insured", not exceeding the aggregate sum of $5,000.

The Veterans' Administration had taken an assignment from him of his rights under the policy, upon his admission to the hospital. And during the time that he continued to be a patient, it submitted statements periodically to the insurer for the reasonable value of the care and treatment which it was providing to him. The statements were in a total of $3,796.69.

The insurer refused to recognize the purported charges as "expenses actually incurred by the Insured", within the terms of the policy, upon the grounds that the insured had sought and qualified for admission, under 38 U.S.C.A. § 706, as a veteran entitled to free care and treatment for his ailment; that in this situation the Veterans' Administration was without authority under the statute to make any charge against him for the care and treatment furnished him; that any charge attempted to be made would therefore not constitute legally an obligation against him; that it could accordingly not be claimed to represent "expenses actually incurred by the Insured";[1] that the insured himself thus would be without any recovery right upon the policy for this care and treatment; and that necessarily in these circumstances the insurer equally could have no liability to the Veterans' Administration as assignee of the insured's rights.

The Government subsequently brought this suit against the insurer, under the assignment taken by the Administrator of Veterans' Affairs, to recover on the policy, as "expenses actually incurred by the Insured", the value of the care and treatment which the Veterans' Administration had thus provided to the insured. After a trial, the court dismissed the action, D.C., 133 F.Supp. 726, and the Government has appealed. We think the judgment is entitled to be affirmed.

The material portion of 38 U.S.C.A. § 706, in the application of the statute to the situation involved, is as follows: " * * * the Administrator of Veterans' Affairs is authorized under such limitations as he may prescribe, and within the

---

1. The insured had originally been taken to a private hospital and also after his release from the Veterans Hospital he had taken outside therapy treatments, for all of which he admittedly had a personal obligation. The insurer had made payments to him under the policy, on account of this obligation, in the amount of $1203.31. The evidence further showed that, in his paraplegic condition, it would be necessary for the insured to incur other personal expenses.

limits of existing Veterans' Administration facilities, to furnish to * * * veterans of any war *. * * medical and hospital treatment for diseases or injuries: *Provided,* That any veteran of any war who was not dishonorably discharged, suffering from disability, disease or defect, who is in need of hospitalization or domiciliary care and is unable to defray the necessary expenses therefor (including transportation to and from the Veterans' Administration facility), shall be furnished necessary hospitalization or domiciliary care (including transportation) in any Veterans' Administration facility, within the limitations existing in such facilities, irrespective of whether the disability, disease, or defect was due to service. The statement under oath of the applicant on such form as may be prescribed by the Administrator of Veterans' Affairs shall be accepted as sufficient evidence of inability to defray necessary expenses."

The provisions of the section, commencing with the word "Provided" and including the sentence which follows the proviso, were not contained in the statute as originally enacted. They came into § 706 a year later, as an addition made by Congress to the previous general terms of the section, in grant of a specifically expressed veteran beneficence. The language used seems to us, as it did to the trial court, to mandate unequivocally that the Administrator of Veterans' Affairs should thereafter, within the bounds of such Veterans' Administration facilities as existed, and within the scope of such operation of them as the Administrator deemed administratively feasible and possible under the funds provided by Congress therefor, furnish necessary hospitalization or domiciliary care to any veteran who had not been dishonorably discharged, when he. was suffering from any disability, disease or defect and was in need of hospitalization or domiciliary care by reason thereof, and when he was financially unable to defray the expenses therefor. And as to the last condition mentioned, the Administrator was left with no power of determination or judgment, but it was expressly mandated that he should accept as sufficient evidence of the veteran's inability to defray necessary expenses, the veteran's own statement under oath, upon a form prescribed by the Administrator, that he was unable to defray such expenses.

The insured here had duly stated under oath, upon a form prescribed by the Administrator, that he was financially unable to pay the expenses of necessary hospital or domiciliary care. The Government's brief says as to the statutory provision: "We do not question that the veteran making such a sworn statement must be admitted if facilities permit." But it argues that, because the Administrator had seen fit to require the veteran further to indicate upon the form supplied to him whether he carried any insurance covering hospital care and the veteran had revealed in answer thereto that he had the policy which is involved, the Administrator was entitled to make a charge in relation to the insurance and to enforce collection thereof against the insurer on the basis of the assignment which the insured had given him.

The argument does not go the length of contending that any attempt by the Administrator to make a charge generally against a veteran, admitted to a Veterans Hospital on the basis of his statement under oath, as provided for by § 706, that he was unable to defray the necessary expenses of hospitalization or domiciliary care, would be capable legally of giving rise to a personal obligation on the part of the veteran for the value of the care furnished to him. Nor does the regulation. which the Administrator has adopted, 38 C.F.R. § 17.48(d), as to situations where a veteran, admitted under the affidavit provided for by the statute, happens to be carrying insurance or may otherwise be entitled to the cost of hospital or medical care from a third party, appear to constitute an attempt by the Administrator to make a charge in fact against the veteran, notwithstanding § 706, so that the veteran thus is not being

accorded free services but is intended by the Administrator to have a personal obligation therefor.

Rather, when the regulation is read as a whole, it would seem that it was designed merely as a vehicle for putting the Administrator in a position facially to seek reimbursement, for the care furnished to a veteran, from any third party who might have a liability, whether direct or contingent, to the veteran in relation thereto. That this is the real nature and purpose of the regulation is evidenced, we think, by the details of its provisions for the taking of an assignment by the Administrator of any such rights as the veteran may have; for the billing of the insurer or other third party by the Administrator for the reasonable value of the care and treatment furnished the veteran; and for the recognizing of a right in the Administrator to make collection against such third party.

The regulation provides: "Persons hospitalized pursuant to (the regulations adopted by the Administrator, 38 C.F.R. § 17.47(c) (1) and (d) (1) to (4), to facilitate the provisions of 38 U.S.C.A. § 706), who it is believed may be entitled to hospital care or medical or surgical treatment or to reimbursement for all or part of the cost thereof, by reason of statutory, contractual, or other relationships with third parties, including those liable for damages by reason of negligence or other legal wrong, will not be furnished hospital treatment without charge therefor to the extent of the amount for which third parties are or will become liable, and such patients will be requested to execute appropriate assignment or other instrument which will entitle the Administrator of Veterans Affairs—on behalf of the United States—to receive and collect, directly or as assignee, from the third party or parties, to the extent of the amount for which such third party is liable, the cost of such care and treatment as determined under the applicable rules and regulations, including medical fee schedules, of the Veterans Administration. * * * Notice of the assignment will be mailed promptly to the party or parties believed to be liable. When the amount of the charges is ascertained bill therefor will be mailed such party or parties. If payment is not received in due course the matter will be referred to the proper chief attorney."

It will be noted that there is in the language used no provision for any billing of the veteran, or for making any demand upon him to pay for the services provided to him, or for undertaking in any manner to make collection against him. The regulation thus, in our opinion, cannot be said to represent legally an attempt by the Administrator to circumscribe the absolute right of a veteran to the free care provided for by the statute, where facilities concededly are available, where the veteran concededly is in need of care, and where the veteran has made statement under oath, upon a form prescribed by the Administrator, that he is financially unable to defray the necessary expenses of such care. We think that the regulation on its face reaches only at the right which a veteran may have against third parties, and, so far as the present record is concerned, there is nothing to indicate that the Administrator has ever previously otherwise construed or applied it.

What may be the legal right of the Administrator to take and enforce an assignment from the veteran of such obligation or liability as a third party may have to him for his care and treatment, we do not believe that there is any occasion for us here generally to consider. The regulation does not purport to require a veteran to execute such an assignment as a condition to his admission, nor do we think that the Administrator would have any right under the proviso of § 706 to impose such a condition. But the question of the right of the veteran to give and the Administrator to accept a voluntary assignment of such a right, whether done on the veteran's own initiative or on the Administrator's request, is a different matter. Compare Montgomery Ward & Co. v. Furlong, 10 Cir., 219 F.2d 726, in which the court seems, at least impliedly, to have given

recognition to such a right in the Administrator.

In any such voluntary assignment made, however, the Administrator would in any event not be able to obtain more legally than the veteran himself had. Here, the veteran had a right under his policy to have the insurer pay him only "for expenses actually incurred" by him. And what he was entitled under the statute to have furnished to him as a veteran beneficence, without obligation of any nature on his part therefor, and what he so accepted, could hardly legally be said, we think, to represent "expenses actually incurred by the Insured".

 "*Incur* emphasizes the idea of liability * * *". Webster's New International Dictionary. 1 Bouv.Law Dict., Rawle's Third Revision, p. 1531 similarly points to this inherency in its definition of the term *incur:* "To have liabilities thrust upon one by act or operation of law * * *". Also, there are examples in specific legal situations, where it has been held that a thing for which there exists no obligation to pay, either express or implied, cannot in law be claimed to constitute an "expense incurred". See e. g. Stern-Slegman-Prins Co. v. Commissioner, 8 Cir., 79 F.2d 289; Bauer Bros. Co. v. Commissioner, 6 Cir., 46 F.2d 874.

What has been said seems to us sufficient to demonstrate the lack of any right on the part of the insured, and so also on the part of the Administrator, to recover on the policy for the care and treatment furnished to the veteran, under the provisions of § 706. The summary of the situation made by the trial court may be repeated: "The court is impressed with the unreality of the position that Kinnier (the insured) has incurred any expense whose payment by him to plaintiff was ever demanded, insisted upon or even expected by plaintiff. The claim of any debt on his part for that expense is a sham or pretense. It lacks that quality of 'actuality' which, the policy declares, must characterize the 'incurred expense' to support a recovery by Kinnier from defendant."

Details of arguments, mostly as to the broad powers given the Administrator in respect to veterans' affairs, have been made in the Administrator's brief, which we do not deem it necessary here to discuss. They were urged before the trial court and have been formally answered in the court's reported opinion, 133 F.Supp. 726, which is readily available. We approve the answers made and the reasons on which they were predicated. But standing out controllingly in the situation is the fact, emphasized above, that the insured claimed, qualified himself to receive, and accepted, the care furnished him, as a veteran's beneficence under § 706, and so was, under the statute, without any obligation to pay therefor, which could make the value of the care and treatment provided to him at the Veterans Hospital "expenses actually incurred" by him as an insured.

Affirmed.