**UNITED STATES of America**

v.

**The HARLEYSVILLE MUTUAL CASUALTY COMPANY, a corporation.**

**Civ. No. 8784.**

United States District Court
D. Maryland.

April 25, 1957.

George Cochran Doub, U. S. Atty., John R. Hargrove, Asst. U. S. Atty., Baltimore, Md., for U. S.

Amzi B. Dreher and George W. White Jr., Baltimore, Md., for defendant.

R. DORSEY WATKINS, District Judge.

This is an action brought by the United States of America on behalf of the Veterans' Administration Hospital, Fort Howard, Maryland, to recover from the defendant insurance company the charges made for hospital services rendered James F. Pritt for the period July 13, 1953, to September 11, 1953, in the amount of $1,331.50, together with interest from April 28, 1955, plus costs.

Pritt had served in the United States Army from March 1, 1949, to June 11, 1952, at which time he was honorably discharged. Subsequently he re-entered the Army and was a serviceman on July 11, 1953, when, as a passenger in an automobile owned and operated by the defendant insurance company's insured, he sustained a severe brain injury occurring when the car in which he was riding collided with a parked truck. He was first taken to a private hospital for treatment and then two days later transferred to the Veterans' Hospital at Fort Howard where he was admitted on the theory that he was a veteran eligible for hospitalization on the basis of his honorable discharge coupled with his inability to defray the necessary expenses of such hospital care. When the hospital authorities learned Pritt was a serviceman, arrangements were made to transfer him to the Station Hospital at Fort George G. Meade, Maryland. This transfer was made on September 11, 1953, the serviceman's medical treatment being undertaken thereafter by the Army. The Veterans' Administration requested reimbursement from the Department of the Army for the sixty days of hospital care which it had furnished to Pritt, which request was denied on the ground that as Pritt was absent without leave from May 31, 1953, until the date of the accident and had been dropped from the rolls as a deserter on June 29, 1953, prior to the accident, he was not eligible for hospitalization at the Army's expense.

Pritt's alleged Army status at the time of the accident was established by an

inquiry required to be held whenever any Army personnel suffer an injury. These proceedings, known as a "line-of-duty determination", resulted in the finding that the accident happened "not in line of duty—not due to misconduct". An Army captain, a witness for the Government, testified that a finding of "not in line of duty" could, but need not, mean absent without leave as, for example, such a finding would be made where a serviceman authorized to be off the post was injured while intoxicated; but that in Pritt's case the finding meant that he was absent without leave and, as the finding had been reviewed and approved by the proper authorities on April 20, 1954, it was binding and final, subject to review, and reversal, only by the Secretary of the Army. The day after the line-of-duty determination Pritt was tried by a court-martial. The desertion charge against him was dropped and he was found not guilty of being absent without leave. The Government's witness testified that medical reports of the Army psychiatrist relating to Pritt's medical history which were not used in the line-of-duty determination were considered at the court-martial, but that even so the finding of the court-martial could in no way overrule, or supersede, the line-of-duty determination.

Faced with the Army's refusal to reimburse the Veterans' Administration, the Veterans' Administration Hospital then billed the serviceman direct for the expenses arising out of his hospitalization at Fort Howard. Although it learned in August 1953, and accordingly prior to Pritt's transfer from Fort Howard on September 11, 1953, that he had filed a claim against the defendant insurance company for injuries sustained in the accident, the Veterans' Administration did not until June 16, 1954 request the serviceman to execute an assignment to the Administrator of Veterans' Affairs which would enable the Administrator to collect, directly or as assignee, from the driver of the car in which Pritt was riding, to the extent of the driver's liability, the cost of Pritt's care and treatment. This Pritt refused to do on advice of counsel.

The Veterans' Administration then filed a lien for hospital services in conformity with the provisions of Article 63, Sections 46–50 of the Code of Public General Laws of Maryland, 1951 Edition. Section 46 gives to any hospital furnishing medical care to a patient who can assert a claim against a tort-feasor for injuries sustained by reason of an accident a lien upon fifty per cent of any sum recoverable by the patient, but not to exceed the amount of the reasonable and necessary charges of such hospital; and section 48 allows any such hospital, after having complied with the statutory requirements as to notice to be given the interested parties, to enforce its lien, for a period of one year from the date of payment, by a suit at law against any insurer making, after notice, payment to such a patient as compensation for the injury sustained. The defendant insurance company settled Pritt's claim for $9256, paid April 28, 1955. A further demand was made by the Veterans' Administration Hospital upon Pritt but he, through counsel, refused payment contending that as a serviceman, he was entitled to hospitalization as a part of his compensation for military service. Suit was then instituted against the insurer of the tort-feasor under the provisions of the Maryland Code as noted above. The money paid to Pritt is being held by his counsel subject to a hold-harmless agreement in favor of the defendant insurer.[1] Pritt, on July 13, 1955, received an "undesirable" discharge, which action is presently under review.

The Government concedes that, regardless of his duty status, Pritt as a serviceman was entitled to hospitalization at an Army hospital. As to his right to medical care as a serviceman at a Veterans' Administration hospital, two regulations require consideration, one promulgated by the Army (32 CFR 577.4(a) (1) (i)),

---

1. Pritt's counsel was not joined as a defendant stake-holder, but has undertaken the defense of this action against the defendant insurer.

and the other by the Veterans' Administration (38 CFR 17.46(b) (1)). They provide as follows:

32 CFR "Sec. 577.4 Medical care in medical treatment facilities of Federal agencies outside Department of Defense—(a) For whom authorized. (1) Medical care in medical treatment facilities of other Federal agencies at the expense of Army Medical Service funds is authorized for the following personnel when the required care cannot be provided by available medical treatment facilities of the Department of Defense:

"(i) Officers, warrant officer, [sic] and enlisted personnel of the Regular Army and cadets of the United States Military Academy. *The duty status of these individuals does not affect their authority to receive medical care.*" (Emphasis supplied.)

38 CFR "Sec. 17.46

"(b) Not subject to the eligibility provisions of secs. 17.47 and 17.48, for:

"(1) Persons in active service with the United States Army, or United States Navy or Marine Corps, when duly referred with authorization therefor, may be supplied hospital treatment. Emergency treatment may be rendered such persons upon their own application, *when absent from their commands,* provided that covering formal authorization be procured as promptly as possible after the emergency treatment is begun." (Emphasis supplied.)

The Government contends that Pritt was not eligible for care in a Veterans' Administration hospital under the provisions of the Army regulation as it has not been shown that Army hospital facilities were not available at the time that treatment was sought. While the regulation clearly so states, it is always

difficult to prove a negative; but the Government, as plaintiff and the party most readily having access to such information, has failed to present any positive evidence relative to the Army hospital facilities available at the time in question and under the particular circumstances involved. This court, accordingly, holds that the plaintiff has failed to carry the burden of proof with respect to Pritt's ineligibility under Army regulations for treatment as a serviceman at a Veterans' Administration hospital.

The Government next takes the position that Pritt was ineligible under the provisions of the Veterans' Administration regulation because the regulation does not purport to authorize treatment to servicemen who are absent without leave, and only authorized admission of servicemen not eligible as veterans under Sections 17.47 and 17.48 of 38 CFR. That the phrase "absent from their commands", as used in the Veterans' Administration regulation, sanctions hospitalization of Army personnel without regard to their duty status, is indicated when the statutory authority for the regulation cited in the Code of Federal Regulations as being 10 U.S.C. § 455e[2] (which provides that, with exceptions not germane to this case, the Secretary of the Army may prescribe regulations to "require" hospitalization necessary for persons in the active military service and may incur obligations with respect thereto *without reference to their line-of-duty status*) is read in conjunction with the applicable Army regulation quoted above. (32 CFR 577.4(a) (1) (i)). Both the statute and the Army regulation make the line-of-duty status inconsequential to eligibility for care in a facility of a federal agency outside the Department of Defense. The Army regulation promulgated within the authority of the statute has the force of law (Hironimus v. Durant, 4 Cir., 1948, 168 F.2d 288, 290, certiorari denied 1948, 335 U.S.

2. Repealed by Act Aug. 10, 1956, c. 1041, § 53, 70A Stat. 641. The present enactment relative to members of the Army is substantially similar (10 U.S.C. § 3723).

818, 69 S.Ct. 40, 93 L.Ed. 373; Stanger v. Glenn L. Martin Company, D.C.D.Md. 1944, 56 F.Supp. 163, 165). The Veterans' Administration regulation should be construed as consonant, not inconsistent, with 10 U.S.C. § 455e and 32 CFR 577.4 (a) (1) (i).

In further denying Pritt's eligibility for care as a serviceman under the Veterans' Administration regulation, 38 CFR Section 17.46(b) (1), the plaintiff has not questioned that such care constituted "emergency treatment" within the meaning of the regulation nor, indeed, would such a proposition be supported by the testimony in the case; the only evidence relative thereto being that Pritt was admitted to Fort Howard in a serious condition with head injuries including a fracture of the skull, that approximately two months later when he was transferred to the Army hospital, ambulance service was required, and that the Army based its refusal to reimburse the Veterans' Administration for the necessary hospital expenses solely on Pritt's alleged duty status.

Relying on the words "not subject to the eligibility provisions of Sections 17.-47 and 17.48" the plaintiff contends that the Veterans' Administration regulation in question, 38 CFR Section 17.46(b) (1), only authorizes admission of servicemen not otherwise eligible for care as veterans. Section 17.46 is captioned "Persons entitled to hospital treatment or domiciliary care". Section 17.46(a) dealing with discharged, released, and retired armed service personnel is qualified "Subject to the eligibility provisions of sections 17.47 and 17.48", those sections prescribing, among other prerequisites to be met in the case of a non-service connected disability, a discharge or release from active duty under other than dishonorable conditions of one who has served during a period of war or has served on or after June 27, 1950 and prior to February 1, 1955. Section 17.46 (b) concerned with persons in active service; beneficiaries of the Public Health Service; of the Bureau of Employees Compensation, and of other federal agencies; and pensioners of nations allied with the United States in World Wars I and II, quite understandably is entitled "Not subject to the eligibility provisions of sections 17.47 and 17.48", for obviously if such persons were required to meet the eligibility provisions of Sections 17.47 and 17.48, Section 17.46 (b) would be mere surplusage.

 The appropriate wording to convey the meaning urged by the plaintiff would be "if not otherwise eligible under the provisions of *section 17.46(a)*". In fact, other regulations of the Veteran's Administration contain substantially similar wording. Section 17.46(a) (5), 1952 Supplement, in listing certain persons entitled to hospital care, includes among these:

"Members or former members of the uniformed services * * * temporarily or permanently retired * * * who require hospitalization * * * and who *have no eligibility* * * * *under laws governing the Veterans' Administration or who have* [sic] *eligibility do not elect hospitalization as Veterans' Administration beneficiaries."* (Emphasis supplied.)

This court, therefore, holds that Section 17.46(b) (1) neither purports to limit authorization of treatment of servicemen to those ineligible for such care as veterans nor to give men in the active service an election between admission as veterans or as servicemen. To hold that soldiers on active duty have the right of election would be to override Section 455e of Title 10, U.S.C., now Section 3723, resting the power and authority to require the hospitalization of Army personnel, and to incur obligations with respect thereto, in the Secretary of the Army.

In addition to the foregoing conclusions reached by this court there are more fundamental reasons for holding that the plaintiff has no right of action against the defendant. The only effect of the two regulations discussed previously can be to determine which of two departments of the Government must

finally bear the expense of Pritt's hospitalization. Regardless of the regulations, or misapprehensions, under which Pritt was admitted to the Veterans' Administration Hospital, he was a serviceman. The Supreme Court has unequivocally held that the Government can not, in the event of negligent injury of a soldier, recover from the tort-feasor amounts expended by the Government for hospitalization and the soldier's pay during his period of disability, as for loss of the soldier's services, in the absence of congressional enactment creating such a cause of action in the Government. United States v. Standard Oil Company of California, 1947, 332 U.S. 301, 67 S.Ct. 1604, 91 L.Ed. 2067. No such federal legislation existed at the time of the Standard Oil case and none has been cited to this court. The plaintiff rather takes the position that Pritt was also a veteran and that Congress has acted to allow the Government to recover in such a case.

Title 38 U.S.C.A. § 706 *requires* the Administrator of Veterans' Affairs to admit a veteran of any war holding a discharge other than a dishonorable one, to Veterans' Administration hospitals for treatment of non-service connected disabilities when the veteran is unable to defray the necessary expenses. Veterans' Administration Regulation 6(A), Part V, 38 U.S.C.A. Chapter 12A, following section 745, authorizes the Administrator to promulgate the proper and necessary rules and procedure governing hospital care. Acting under such authority, the Administrator provided as set out in Title 38 CFR, 1952 Supplement, Section 17.48(d), that:

> "(d) Persons hospitalized pursuant to sec. 17.47(c) (1) or (d) (1) to (4), inclusive, who it is believed may be entitled to hospital care or medical or surgical treatment or to reimbursement for all or part of the cost thereof, by reason of statutory, contractual, or other relationships with third parties, including those liable for damages by reason of negligence or other legal wrong, *will not* be furnished hospital treatment without charge therefor to the extent of the amount for which third parties are or will become liable, and such patients *will be requested* to execute appropriate assignment or other instrument which will entitle the Administrator of Veterans Affairs—on behalf of the United States—to receive and to collect, directly or as assignee, from the third party or parties, to the extent of the amounts for which such third party is liable, the cost of such care and treatment as determined under the applicable rules and regulations, including medical fee schedules, of the Veterans Administration. The words 'by reason of statutory or contractual relationship' as used in this paragraph include, but are not limited to (1) membership in a union, fraternal or other organization, (2) rights under a group hospitalization plan, or under any insurance contract or plan which provides for payment or reimbursement for the cost of medical or hospital care, and conditions the obligation of the insurer to pay upon payment or incurrence of liability by the person covered, (3) 'workmen's compensation' or 'employers' liability' statutes, State or Federal', (4) right to 'maintenance and cure' in admiralty. Notice of the assignment will be mailed promptly to the party or parties believed to be liable. When the amount of charges is ascertained bill therefor will be mailed such party or parties. If payment is not received in due course the matter will be referred to the proper chief attorney." (Emphasis supplied.)

As noted previously in this opinion, such a regulation if within the authority of the statute has the effect of law (Hironimus v. Durant, supra; Stanger v. Glenn L. Martin Co., supra). This regulation, and all relevant statutory provisions, were carefully considered in United States v. St. Paul Mercury Indemnity Company, 1955, D.C.D.Neb., 133 F.Supp. 726, affirmed 8 Cir., 1956, 238 F.2d 594,

and recovery denied the United States *as an express assignee* of benefits under a poliomyelitis policy held by the veteran accorded care, as the coverage of the policy extended only to expenses actually incurred by the insured, and none had been incurred by the insured veteran. This court is entirely in accord with the analysis, reasoning and conclusions of both the district and appellate courts. The district court said, in part:

"The court concludes that the statute itself, Title 38 U.S.C.A. § 706, makes imperative the allowance of hospitalization and treatment to the extent of available facilities in behalf of a veteran not dishonorably discharged who, being in need of such hospitalization and treatment, makes affidavit on a prescribed Veterans' Administration form that he is unable to defray the necessary expense therefor. It is also persuaded that the Veterans' Administration is without authority by regulation to devitalize that right in a veteran, or to condition its enjoyment. Short of a determination of fraud justifying the denial of admission or termination of stay, it appears that the administration has no discretion in the matter. And even for fraud in the way of perjury it would appear that the obvious sanction is criminal prosecution.

"* * * The simple truth is that the entire scheme reflected in the regulation contemplates an assignment of a supposed, but yet unmatured, claim under the policy against the alleged insurer or insurers, (to carry the classification no further) and thereafter the Administration's dealing in the matter of reimbursement, with the insurer or insurers, not with the stricken veteran. The court is forced to conclude in the light of the whole plan that Veterans' Administration has no purpose or intention to pursue Gray Kinnier [the veteran] for payment of the bill which it now seeks

to recover from defendant [the insurer of the veteran]. * * *

"It appears to this court that the Congress has not erected within the Veterans' Administration a system of commercial hospitalization open to the limited patronage of veterans of American wars. Though the term may be accepted reluctantly, it is none the less true that the Administration's hospitals are essentially charitable, within the area of their service. The charity may be understood to be available to men whose service to their country has purchased and paid for it in advance. But it is still charity in the sense that in its current provision it is not to be paid for by the recipient. Nor is the Administration supposed to sell the accommodations and services of its hospitals to eligible beneficiaries at prices proportioned to their respective abilities to pay, in descending scale from the highest reasonable price to nothing. The Administration's prime question seems to be whether an applicant is eligible to receive its hospitalization. If he is, he is entitled to receive it without price, so far as the available facilities from time to time extend." United States v. St. Paul Mercury Indemnity Company, 133 F.Supp. 726, 736–737.

In affirming, the Court of Appeals said:

"What may be the legal right of the administrator to take and enforce an assignment from the veteran of such obligation or liability as a third party may have to him for his care and treatment, we do not beieve that there is any occasion for us here generally to consider. The regulation does not purport to require a veteran to execute such an assignment as a condition to his admission, nor do we think that the Administrator would have any right under the proviso of § 706 to impose such a condition. But the question of the right of the veteran to give

and the Administrator to accept a voluntary assignment of such a right, whether done on the veteran's own initiative or on the Administrator's request, is a different matter. Compare Montgomery Ward & Co. v. Furlong, 10 Cir., 219 F.2d 726, in which the court seems, at least impliedly, to have given recognition to such a right in the Administrator." United States v. St. Paul Mercury Indemnity Co., 238 F.2d 594, 597–598.

In the instant case the veteran refused to execute an assignment. Thus any claim of a right to proceed against the insurer based on the regulation of the Veterans' Administration must fail (The Steel Inventor, D.C.S.D.N.Y.1929, 36 F.2d 399, 401). Instead, the Government asserts its claim by way of a statutory lien created under Maryland law.

"Perhaps no relation between the Government and a citizen is more distinctively federal in character than that between it and members of its armed forces. To whatever extent state law may apply to govern the relations between soldiers or others in the armed forces and persons outside them *or nonfederal governmental agencies,* the scope, nature, legal incidents and consequences of the relation between persons in service and the Government are fundamentally derived from federal sources and governed by federal authority.

\* \* \* \* \* \*

"Not only is the government-soldier relation distinctively and exclusively a creation of federal law, but we know of no good reason why the Government's right to be indemnified in these circumstances, or the lack of such a right, should vary in accordance with the different rulings of the several states, simply because the soldier marches or today perhaps as often flies across state lines." (Emphasis supplied.) United States v. Standard Oil Co., supra,

332 U.S. at pages 305–306, 310, 67 S. Ct. at pages 1607–1609.

This principle was reiterated in Feres v. United States, 1950, 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152, and extended to civilian employees of the federal government in United States v. Gilman. 1954, 347 U.S. 507, 74 S.Ct. 695, 98 L.Ed. 898, in which the United States was denied the right to recover indemnity from one of its employees after it had been held liable under the Federal Tort Claims Act, 28 U.S.C.A. §§ 1346, 2671 et seq., for the negligence of the employee, the Supreme Court again stating that where federal fiscal affairs are involved the policy relating thereto must be formulated by Congress, not the court. The relationship between the Government and its veterans is no less federal in character than the relationship between the Government and its servicemen or its civilian employees (Plesha v. United States, 9 Cir., 1955, 227 F.2d 624, 627, affirmed 1957, 352 U.S. 202, 204, 77 S. Ct. 275, 1 L.Ed.2d 254). This court concludes that the Government can not rely for indemnity or reimbursement on a general statutory hospital lien created by the law of the State in which the federal hospital is located. A contrary conclusion would only result in that lack of uniformity condemned by the Supreme Court in the Standard Oil case.

If Pritt be regarded as a serviceman, he was entitled to hospitalization without charge under the provisions of 32 CFR 577.4(a) (1) (i) and of 38 CFR 17.46(b) (1). If he be regarded as a veteran, he was entitled to such services without charge under the mandatory provisions of Title 38 U.S.C.A. § 706. There is no federal statute, or regulation having the force of law, which purports to authorize collection of expenses for such care from the veteran. The operation of the Veterans' Administration regulation, intended to allow the Government to recover from tort-feasors, is conditioned at least, and expressly, on the voluntary giving of an assignment of the veteran's claim, which assignment

334

was not given in the instant case. Absent federal legislation, or regulations promulgated under the authority of such federal statutes, no action can be brought against the tort-feasor or against the tort-feasor's insurer.

Judgment of dismissal for the defendant.