## CRITERION INSURANCE COMPANY
### *v.* STARKES

[No. 208, September Term, 1967.]

*Decided May 9, 1968.*

The cause was argued before HAMMOND, C. J., and HORNEY, McWILLIAMS, FINAN and SINGLEY, JJ.

*C. MacNair Speed* and *Frederick J. Green, Jr.,* with whom were *Lord, Whip, Coughlan & Green* on the brief, for appellant.

*Herbert J. Hirsch* for appellee.

FINAN, J., delivered the opinion of the Court.

The narrow question to be decided in this appeal is whether, under the following facts, the appellee-insured "incurred" a

medical expense, for which he is entitled to be indemnified by the appellant-insurer, under the "medical payments" provision of its automobile insurance policy.

On January 1, 1966, the appellee, an Army veteran, was involved in an automobile collision with Louis Henry Hammer. The appellee was taken to St. Agnes Hospital in Baltimore, and later was treated at the United States Public Health Service Hospital in Baltimore. The services rendered the appellee between January 1 and June 1, 1966 at the Public Health Service Hospital represented a reasonable value of $2,362.

On January 14, 1966, the appellee agreed to assign to the United States any claim, demand or cause of action against a third party tortfeasor resulting from the accident. This agreement to an assignment was pursuant to 42 U.S.C. § 2651, which permits the United States to recover from such a third party the reasonable value of services rendered to the injured party, either as a subrogee or as an assignee of the injured person. However, the agreement to assign specifically stated that it was not to be construed as an assignment. This instrument further provided that:

> "If I assert a personal injury claim in my own behalf and make a recovery therein, whether by judgment, compromise settlement, or otherwise, I agree to hold in trust for the United States out of the proceeds thereof the full amount of its claim for the reasonable value of the medical care and treatment furnished to me by or at the expense of the United States and to pay over such amount as directed by the United States."

The appellee later made claim upon Louis Henry Hammer, and the United States also filed its notice of claim accompanied by vouchers totalling $2,362. These claims were settled by Hammer's insurer in the amount of $22,100, with a release in that amount being executed solely by the appellee. On March 21, 1967, the tortfeasor's insurance company paid the claim by two checks, one of which was in the amount of $2,362 and was payable jointly to the appellee, the United States Army and the

Department of Health, Education and Welfare. The appellee endorsed this check over to the government.

Thereafter, the instant suit was instituted against the appellant-insurance company, the appellee claiming indemnification of the medical expenses up to the $2,000 limit of the automobile insurance policy. The relevant terms of coverage are:

> "Coverage C—Automobile Medical Payments
>
> To pay all reasonable expenses incurred within one year from the date of accident for necessary medical, surgical and dental services, including prosthetic devices, and necessary ambulance, hospital, professional nursing and funeral services:
>
> Division 1. To or for each person who sustains bodily injury, sickness or disease, caused by accident, while in or upon or while entering into or alighting from the automobile, provided the automobile is being used by the named insured or his spouse if a resident of the same household, or with the permission of either; or
>
> Division 2. To or for each insured who sustains bodily injury, sickness or disease, caused by accident, while in or upon, or while entering into or alighting from, or through being struck by, an automobile."

After a hearing, the lower court granted the appellee's motion for summary judgment and entered judgment in the amount of $2,000 in favor of the appellee.

Basically, the appellant argues that because the insured was an Army veteran, the medical and hospital expenses were provided without charge by the Public Health Service, and therefore the appellee did not in fact "incur" those expenses. Its argument focuses on Title 38 of the United States Code, governing benefits to veterans. At the time the appellee was admitted to the Public Health Service hospital Section 610 stated, in relevant part:

> "(a) The Administrator, within the limits of Veterans' Administration facilities, may furnish hospital care which he determines is needed to—

(1) a veteran of any war for a service-connected disability incurred or aggravated during a period of war, or for any other disability if such veteran is unable to defray the expenses of necessary hospital care; * * *."

According to §622 of the same title:

"For the purposes of section 610 (a) (1), * * * of this title, the statement under oath of an applicant in such form as may be prescribed by the Administrator shall be accepted as sufficient evidence of inability to defray necessary expenses."

The authorities presented before this Court are in general agreement that a recipient of benefits under §§ 610 and 622 does not "incur" an indemnifiable expense. See *United States v. St. Paul Mercury Indemnity Co.,* 238 F. 2d 594 (8 Cir. 1956); *Drearr v. Connecticut General Life Ins. Co.,* 119 So. 2d 149 (La. 1960). Indeed, the holdings of these and other cases, in the context of the legislative history of the federal statute, compel the conclusion that a veteran entering a V. A. hospital under the provisions of Title 38, § 610 will never "incur" a medical expense within the normal terms of a medical payment provision in an insurance policy.

In *United States v. St. Paul Mercury Indemnity Co., supra,* a veteran of World War II was insured by the defendant insurer against "expenses actually incurred" were he to be stricken by poliomyelitis. After contracting the disease, the insured was hospitalized at a Veterans' Administration hospital and received treatment under the former statute, 38 U.S.C. § 706, which stated:

"The Administrator of Veterans' Affairs is authorized under such limitations as he may prescribe, and within the limits of existing Veterans' Administration facilities, to furnish to * * * veterans of any war * * * medical and hospital treatment for diseases or injuries: *Provided* that any veteran of any war who was not dishonorably discharged, suffering from disability, disease or defect, who is in need of hospitaliza-

tion or domiciliary care *and is unable to defray the necessary expenses therefor* * * *, shall be furnished necessary hospitalization or domiciliary care * * *. The statement under oath of the applicant in such form as may be prescribed by the Administrator of Veterans' Affairs shall be accepted as sufficient evidence of inability to defray necessary expenses." (Emphasis supplied.)

After paying the insured's hospital bill, the Veterans' Administration instituted suit against the insurance company under an assignment of claims executed by the insured. The Court of Appeals for the Eighth Circuit held, as a matter of first impression, that the insured was in the position of a charitable patient, and entitled to free medical services under the statute. As such, he did not incur a personal liability to the hospital for which the insurer would be held liable under its policy of indemnification.

The circumstances in *Drearr* parallel those of *St. Paul Mercury* except that in *Drearr* the insured, rather than the Veterans' Hospital, brought the action against the insurer. There the Court held, on the authority of *St. Paul Mercury,* that the insured was entitled to gratuitous medical services by reason of his oath of inability to defray expenses, and therefore he did not incur a liability.

In furtherance of its position the appellant has submitted to this Court copies of two Maryland nisi prius decisions, *Rizzio v. Government Employees Insurance Co.,* Docket 11 PC, No. 062377, and *Velasco v. State Farm Mutual Automobile Insurance Co.,* Docket 7 PC, No. 157-1959, both issuing out of the Baltimore City Court. In both cases, the insured was a serviceman on active duty at the time of his injury. The federal government is obligated to provide medical service and hospitalization to active members of the armed forces without liability to the injured person. *Cf. Plank v. Summers,* 203 Md. 552, 102 A. 2d 262 (1954). Therefore, it seems clear that by reason of the free medical services the injured party had not "incurred" an expense. See also *Gordon v. Fidelity & Casualty Co. of New York,* 120 S. E. 2d 509 (S. C. 1961).

On the basis of these cases alone, we might be inclined to agree with the appellant that the appellee-insured received gratuitous medical and hospital benefits, and is not entitled to that part of the recovery obtained from his tortfeasor attributable to those expenses. However, we believe that the appellant's argument fails to recognize the fact that, 1) the appellee did not make an oath of his inability to pay medical expenses; and 2) it is not the provisions of Title 38 which govern the determination of this case, but those laws which at the time of the appellee's admission to the Public Health Service hospital controlled the administration of the Public Health Service.

That the appellee could not receive Title 38 benefits seems clear, not only from the language of the statute, which makes no reference at all to benefits in favor of financially capable veterans, but also from the statements in those cases which interpret the statute. In *St. Paul Mercury,* the Court of Appeals for the Eighth Circuit stated:

> "The language seems to us, as it did to the trial court, to mandate unequivocally that the Administrator of Veterans' Affairs should thereafter, * * * furnish necessary hospitalization or domiciliary care to any veteran who had not been dishonorably discharged, when he was suffering from any disability, disease or defect and was in need of hospitalization or domiciliary care by reason thereof, *and when he was financially unable to defray the expenses therefor."* 238 F. 2d at 596. (Emphasis supplied.)

In *Drearr,* the Court articulated the obvious corollary to the statement in *St. Paul Mercury:*

> "A most cursory reading of the statute is sufficient to convince anyone that as a veteran plaintiff, upon admission to the hospital, was entitled to free care and treatment for his ailment if he made the required statement under oath on the form prescribed by the Administrator setting forth his inability to defray necessary expenses. *If his financial status was such that he could not subscribe to that oath, then the plaintiff veteran*

*does not possess eligibility for admission in the first place.* (Emphasis supplied.) 119 So. 2d at 151.

Furthermore, within the framework of the facts set before this Court, we would be unable to reach a decision based on the Veterans' Benefits title (38 U.S.C.), because the insured did not avail himself of the services of a Veterans' Administration hospital, but rather entered a United States Public Service hospital. As we read Title 38, and the regulations promulgated thereunder, the Administrator of Veterans' Affairs does not maintain jurisdiction over Public Health Service hospitals. In short, the question of whether the insured-appellee did incur an expense at the hospital can only be answered after consideration of his rights to gratuitous medical treatment, if there be any, as provided in the relevant title of the United States Code.

In our opinion the controlling statutory provision is not found in Title 38 as contended by the appellant, but is found in Title 42, U.S.C. § 249, which was in effect during January of 1966 when the appellee entered the United States Public Health Service Hospital in Baltimore. Section 249 sets out those persons entitled to medical care without charge at such an installation; specifically named are merchant seamen, seaman cadets, members of the Public Health Service and various classes of domestic and foreign merchant marine sailors. The statute then states:

"(d) Persons not entitled to treatment and care at institutions, hospitals, and stations of the Service may, in accordance with regulations of the Surgeon General, be admitted thereto for temporary treatment and care in case of emergency."

The only regulation purporting to clarify that section is 42 C.F.R. 32.111 (1968), which states:

"(a) Persons not entitled to treatment by the Service may be provided temporary care and treatment by the Service in case of emergency as an act of humanity. Such temporary care and treatment shall be limited to hospitalization at first-class stations [mean-

ing a hospital operated by the Public Health Service. 42 C.F.R. 31.1 (e)] * * *.

"(b) *Persons referred to in paragraph (a) of this section who, as determined by the medical officer in charge, are able to defray the cost of their care and treatment shall be charged for such care and treatment* at the following rates (which shall be deemed to constitute the entire charge in each instance) : In the case of hospitalization, at the current interdepartmental reimbursable per diem rate as established by the Bureau of the Budget; and, in the case of outpatient treatment, at rates established by the Surgeon General." (Emphasis supplied.)

Only one case involving treatment at a Public Health Service hospital has been brought to our attention. In *Irby v. Government Employees Insurance Co.,* 175 So. 2d 9 (La. 1965), the insured was injured while serving on *active duty* with the Coast Guard. He was treated at a Public Health Service hospital, the reasonable value of its services amounting to $312. Both the insured and the Department of Health, Education and Welfare received separate settlements from the tortfeasor. The insured then sued his insurance company under the policy's medical payment provisions. The Court held that the insurer was under no obligation to pay for the services by the hospital. This decision was based on the Veterans' Benefits cases of *St. Paul Mercury* and *Drearr,* and stated that because the insured was never under any obligation to pay the medical and hospital expenses, he never "incurred" them. Obviously, the insured never "incurred" expenses for the same reason that the claimants in the two Maryland nisi prius decisions did not "incur" expenses, that is, the fact that as active duty servicemen, the United States had an absolute obligation to provide hospitalization and medical care. *See,* 42 U.S.C. § 253.

The Court in *Irby* also based its decision on the fact that two distinct and separate claims were made upon the tortfeasor: that of the injured party for personal injuries and that of the United States for medical and hospital services. The attorney for the insured merely processed both claims, forwarding the government's release to the tortfeasor's insurer with direc-

tions to the insurer to issue a draft to the order of the proper governmental department. Although the rationale might tend to obfuscate the nature of the government's claim as subrogee and, superficially, support the argument that the insured does not "incur" the hospital's expense, this fallacy becomes apparent when we contemplate that the primary right against the tortfeasor was vested in the insured, the government's right being only derivative. Such a conclusion is compelled by the clear language of 42 U.S.C. § 2651:

> "In any case in which the United States is *authorized or required by law* to furnish hospital, medical, surgical, or dental care and treatment (including prostheses and medical appliances) to a person who is injured or suffers a disease, after the effective date of this Act, under circumstances creating a tort liability upon some third person * * * to pay damages therefor, the United States shall have a right to recover from said third person the reasonable value of the care and treatment so furnished or to be furnished and shall, as to this right be subrogated to any right or claim that the injured or diseased person, his guardian, personal representative, estate, dependents, or survivors has against such third person to the extent of the reasonable value of the care and treatment so furnished or to be furnished. The head of the department or agency of the United States furnishing such care or treatment *may* also require the injured or diseased person, his guardian, personal representative, estate, dependents, or survivors, as appropriate, to assign his claim or cause of action against the third person to the extent of that right or claim." (Emphasis supplied.)

The interesting question of whether the statute gives the government an independent right of recovery against the tortfeasor is not relevant to the determination in this case, since the veteran, where he is capable of paying for the medical care and hospital services, might still remain liable for these expenses, if the government is unable to obtain satisfaction from the tortfeasor. Conceivably, the tortfeasor may prove to be judgment proof.

We think that a strong argument exists against the primary and independent right of the government to recover from the tortfeasor for the value of the services rendered to the injured veteran. *United States v. Standard Oil Company,* 332 U. S. 301 (1947), which predated the present statute, involved the government's efforts to recover the costs of hospitalization and soldier's pay expended by it as the result of the tortious injury of a soldier by the defendant. In denying recovery, the Court stated:

> "The Government's claim, of course, is not one for subrogation. It is rather for an independent liability owing directly to itself as for deprivation of the soldier's services and 'indemnity' for losses caused in discharging its duty to care for him consequent upon the injuries inflicted by [appellees]. * * *. It is, in effect, for tortious interference by a third person with the relation between the Government and the soldier and consequent harm to the Government's interest, rights, and obligations in that relation, not simply to subrogation to the soldier's rights against the tortfeasors." 332 U.S. at 304, n 5.

In a memorandum prepared for the Congressional staff drafting § 2651, it was stated:

> "The instant bill does not purport to create an independent right in the Government to recover for the injury done to its relationship with the injured person. Instead, it would permit the United States to exercise the rights of such person. * * *. If an injured person has no right to recover for the costs of hospital and medical care furnished by the United States, the United States, as subrogee or statutory assignee of that person, would be unable to recover such costs." 1962 U. S. Code Cong. & Ad. News, 2646.[1]

In the instant case the non-indigent veteran agreed to hold in trust for the government, out of the recovery on his primary

---

1. We note that, prior to the adoption of § 2651, the Department of Justice submitted an opinion on the legality of the proposed

claim, an amount equal to the reasonable costs of his medical care. There is nothing in the record revealing that he declared that he was not financially able to pay for such care or that payment was contingent on his successful recovery against the tortfeasor. The record would support facts consistent with "incurred" liability.

The appellant, in argument before this Court, concedes that, had the insured been treated at a private hospital and billed for its services, he would have "incurred" the expenses notwithstanding the recovery from the tortfeasor, and the appellant would be liable to the extent of its undertaking in the policy.

In the instant case the Department of Health, Education and Welfare forwarded to the insured's attorney a summarization of the cost of the medical care and treatment rendered by the Public Health Service. We think that since the evidence fails to establish that the appellee was entitled to gratuitous medical services when, through his attorney, he arranged for the medical expenses to be paid to the government out of the proceeds of his settlement with the tortfeasor, he "incurred" a medical expense. Under these circumstances, the contract of insurance entitled him to indemnification.

*Judgment affirmed, with costs.*

---

bill. The letter, addressed to Hon. Emanuel Celler, of the House Judiciary Committee, was written by Justice Byron R. White, then serving as Deputy Attorney General. In relevant part it stated:

"In the drafting of the bill, consideration was given to the fact that in many jurisdictions an assignment of a cause of action for personal injuries (including consequential damages, such as medical expenses) is, in varying degree, either not valid at all or not enforceable directly against the third person tort-feasor, and that frequently a mere partial assignment is not so recognized, even if a total assignment would be. * * *.

"It was, therefore, considered preferable to bottom the basic theory of this legislation on the 'subrogation' concept, one which is universally recognized, understood, and regularly applied by all courts, and which would more closely conform the rights of the United States, and the procedure for their enforcement, to the local law and practice, whatever it might be. It is on this theory that the present bill is framed. * * *." *See,* 1962 U. S. Code Cong. & Ad. News, 2643-2644.