UNITED STATES of America, Plaintiff–Appellant,

v.

Thomas TRAMMEL, Defendant–Appellee,

Motorists Mutual Insurance Company, Defendant.

No. 88–6241.

United States Court of Appeals, Sixth Circuit.

Argued Aug. 7, 1989.

Decided April 3, 1990.

Rehearing and Rehearing En Banc Denied June 12, 1990.

David Y. Olinger, Jr., Asst. U.S. Atty., Louis DeFalaise, U.S. Atty., Lexington, Ky., Freddi Lipstein, U.S. Dept. of Justice, Appellate Section, Joan E. Hartman (argued), U.S. Dept. of Justice, Civ. Div., Washington, D.C., for plaintiff-appellant.

Robert L. Milby, Hamm, Milby, & Ridings, London, Ky., Tim Lavender (argued), Whitley City, Ky., for defendant-appellee.

Before JONES and NORRIS, Circuit Judges, and McQUADE, District Judge.[*]

ALAN E. NORRIS, Circuit Judge.

The government appeals from an order of summary judgment denying its claim under the Federal Medical Care Recovery Act ("FMCRA"), 42 U.S.C. §§ 2651–2653. The district court concluded that, under the facts of this case, the government's FMCRA rights are effectively abrogated by Kentucky's no-fault insurance statute. On appeal, we are asked to determine the extent to which the government's right under the federal statute is independent of the substantive law of the state on which it is predicated. For the reasons set out more fully below, we affirm.

## I.

On July 13, 1983, a truck driven by defendant, Thomas Trammel, collided with a motorcycle driven by Johnny Troxell in McCreary County, Kentucky. The motorcycle slid under defendant's truck and Troxell sustained serious injuries requiring medical treatment. At the time of the accident, Troxell was on active duty in the United States Navy. The federal government, therefore, provided Troxell with free medical care pursuant to 10 U.S.C. § 1074 [1]

---

[*] The Honorable Richard B. McQuade, Jr., United States District Judge for the Northern District of Ohio, sitting by designation, participated in oral argument but, due to his resignation effective October 1, 1989, took no part in the opinion.

[1.] 10 U.S.C. § 1074, amended in 1984, provides in pertinent part:

  (a) Under joint regulations to be prescribed by the administering Secretaries, a member of a uniformed service who is on active duty is

and incurred expenses amounting to $5,215.

Under Kentucky's modified no-fault statute, all drivers are deemed to have accepted the state's no-fault provisions including an "abolition"[2] of tort liability for the first $10,000 of economic loss, which are covered by the basic reparation benefits provision of the statute.[3] Accordingly, Troxell was precluded from recovering the first $10,000 of his loss[4] because he did not reject the limitation on his tort rights as provided in Ky.Rev.Stat.Ann. § 304.39–060(4) (Baldwin 1988).[5] Kentucky's no-fault statute, however, does not affect an injured party's right to recover "for pain, suffering, mental anguish and inconvenience because of bodily injury, sickness or disease" provided that certain statutory thresholds are met.[6]

entitled to medical and dental care in any facility of any uniformed service.

**2.** The word abolition is placed in quotation marks because § 54 of the Kentucky Constitution prohibits the General Assembly from limiting "the amount to be recovered for injuries resulting in death, or for injuries to person or property." Challenges to the no-fault law based on this section have been definitively rejected by Kentucky's highest court. The apparent conflict between the statute and the state constitution was upheld on a theory of implied consent. *Fann v. McGuffey,* 534 S.W.2d 770 (Ky.1975).

**3.** Kentucky's no-fault statute defines basic reparation benefits as

benefits providing reimbursement for net loss suffered through injury arising out of the operation, maintenance or use of a motor vehicle, subject, where applicable, to the limits, deductibles, exclusions, disqualifications and other conditions provided in this subtitle. The maximum amount of basic reparation benefits payable for all economic loss resulting from injury to any one person as the result of one (1) accident shall be ten thousand dollars ($10,000), regardless of the number of persons entitled to such benefits or the number of providers of security obligated to pay such benefits. Basic reparation benefits consist of one (1) or more of the elements defined as "loss."

Ky.Rev.Stat.Ann. § 304.39–020(2) (Baldwin 1988).

**4.** Kentucky's no-fault insurance statute defines loss as

accrued economic loss consisting only of medical expense, work loss, replacement services loss, and, if injury causes death, survivor's economic loss and survivor's replacement services loss. Noneconomic detriment is not loss. However, economic loss is loss although caused by pain and suffering or physical impairment.

Ky.Rev.Stat.Ann. § 304.39–020(5) (Baldwin 1988).

**5.** Ky.Rev.Stat.Ann. § 304.39–060 (Baldwin 1988) provides, in pertinent part:

(1) Any person who registers, operates, maintains or uses a motor vehicle on the public roadways of this Commonwealth shall, as a condition of such registration, operation, maintenance or use of such motor vehicle and use of the public roadways, be deemed to have accepted the provisions of this subtitle, and in particular those provisions which are contained in this section.

. . . .

(4) Any person may refuse to consent to the limitations of his tort rights and liabilities as contained in this section. Such rejection must be in writing in a form to be prescribed by the department of insurance and must have been executed and filed with the department at a time prior to any motor vehicle accident for which such rejection is to apply. . . .

. . . .

(7) Any rejection shall result in the full retention by the 'individual' of his tort rights and his tort liabilities. Any person injured by a motor vehicle operator who has such rejection on file may claim his full damages, including non-pecuniary damages, or, if such injured person has not rejected his own tort limitations, he may also claim basic reparation benefits from the appropriate security on the vehicle as established under KRS 304.-39–050.

**6.** Ky.Rev.Stat.Ann. § 304.39–060(2)(b) (Baldwin 1988) provides:

(b) In any action of tort brought against the owner, registrant, operator or occupant of a motor vehicle with respect to which security has been provided as required in this subtitle, or against any person or organization legally responsible for his acts or omissions, a plaintiff may recover damages in tort for pain, suffering, mental anguish and inconvenience because of bodily injury, sickness or disease arising out of the ownership, maintenance, operation or use of such motor vehicle only in the event that the benefits which are payable for such injury as "medical expense" or which would be payable but for any exclusion or deductible authorized by this subtitle exceed one thousand dollars ($1,000), or the injury or disease consists in whole or in part of permanent disfigurement, a fracture to a bone, a compound, comminuted, displaced or compressed fracture, loss of a body member, permanent injury within reasonable medical

The government subsequently filed an action against Trammel and his insurer, Motorists Mutual Insurance Company, in the United States District Court for the Eastern District of Kentucky, seeking to recover the amount spent on Troxell's medical care.[7] The government's claim was based upon the FMCRA, which provides that when the government is required by law to furnish medical treatment, it may recover the reasonable value of such treatment if state law imposes tort liability upon a third-party tortfeasor. 42 U.S.C. § 2651. The district court granted defendant's motion for summary judgment, reasoning that since Kentucky's no-fault statute eliminated tort liability for the first $10,000 of medical expenses, there was no tort claim to which the government could be subrogated under the FMCRA.

On appeal, the government contends that the district court misinterpreted the FMCRA, improperly denied its FMCRA claim, and adopted a holding contrary to Congress' stated purpose.

## II.

Recognizing the need to maintain high morale in the uniformed services, Congress has chosen to provide this vast group of persons with medical care at the expense of the federal government.[8] This laudable goal would be expensive under any circumstances. It has proven to be an especially onerous financial burden because Congress has decided to pay for medical care furnished at either government or private facilities. Since many of the injuries sustained by servicemen are the result of third-party negligence, the government has, quite naturally, desired to recover its expenses from negligent parties.

Absent specific federal legislation, however, the Supreme Court has not permitted the government a right of recovery, refusing to create an additional category of federal tort liability and refusing to extend by analogy the common law's protection against loss of services and "assimilated injuries" that the common law affords to various relationships.[9] Prior to the enactment of the FMCRA, in *United States v. Standard Oil Co.*, 332 U.S. 301, 67 S.Ct. 1604, 91 L.Ed. 2067 (1947), the government argued that it was entitled to recover its expenditures because the negligence of third parties tortiously interfered with the relationship between the government and its employees. The Supreme Court rejected this argument, reasoning that federal law is the sole basis for interpreting the legal relationship between servicemen and the government and no federal law existed to sustain such a claim. *Id.* at 305–314, 67 S.Ct. at 1606–1611. In addition, the Court was reluctant to involve itself in matters of military and fiscal policy. *Id.* at 314–16, 67 S.Ct. at 1611–12. The Court noted, however, that Congress was free to "take steps to prevent interference with federal funds, property or relations." *Id.* at 315, 67 S.Ct. at 1611.

Congress passed the FMCRA in 1962 as a belated response to the Supreme Court's decision in *Standard Oil.* The FMCRA's primary purpose was to enable the government to recoup some of the millions of dollars it expends annually providing medical care to military personnel whose injuries are the result of the tortious conduct of third parties. In addition, the FMCRA was designed to prevent the unjust enrichment of victims, who were able to recover under the permissive decisions allowing recovery under the collateral source doctrine, and tortfeasors and their insurance compa-

---

probability, permanent loss of bodily function or death. Any person who is entitled to receive free medical and surgical benefits shall be deemed in compliance with the requirements of this subsection upon a showing that the medical treatment received has an equivalent value of at least one thousand dollars ($1,000).

**7.** The claim against Motorists Mutual was dismissed by order of August 12, 1986.

**8.** 10 U.S.C. § 1071 states that the purpose of Chapter 55 is to "create and maintain high morale in the uniformed services by providing an improved and uniform program of medical and dental care for members and certain former members of those services, and for their dependents."

**9.** *See* Bernzweig, *Public Law 87–693: An Analysis and Interpretation of the Federal Medical Care Recovery Act,* 64 Colum.L.Rev. 1257 (1964).

nies, who benefited from windfall savings.[10]

■ Although the government only had a derivative right of subrogation under the original draft of the Act,[11] subsequent amendments granted the government the right to sue independently. Currently, the FMCRA expressly permits the government to enforce its right of recovery either by direct legal action or by intervening or joining in any action brought by the injured party against the third-party tortfeasor. 42 U.S.C. § 2651(b). The independent right to sue, however, does not mean that an independent cause of action exists in all circumstances. The FMCRA states:

> In any case in which the United States is authorized or required by law to furnish hospital, medical, surgical, or dental care and treatment ... to a person who is injured or suffers a disease, after the effective date of this Act, *under circumstances creating a tort liability upon some third person* ... to pay damages therefor, the United States shall have a right to recover from said third person the reasonable value of the care and treatment so furnished.

42 U.S.C. § 2651(a) (emphasis added). The language of the FMCRA, therefore, clearly limits the government's right of recovery to situations where state law imposes tort liability upon a negligent person.

The government argues, nonetheless, that its right of recovery is distinct from, and independent of, the injured party's right to recover in a state law action. The FMCRA, it argues, entitles the government to recover whether or not the injured party would be entitled to recover those expenses in a state law tort action against the tortfeasor. In support of this proposition, the government cites several cases whose holdings ostensibly permit the government to recover, regardless of the state's tort law. *See, e.g., United States v. Haynes,* 445

F.2d 907 (5th Cir.1971); *United States v. Moore,* 469 F.2d 788 (3d Cir.1972), *cert. denied,* 411 U.S. 905, 93 S.Ct. 1528, 36 L.Ed.2d 195 (1973). We believe that these cases are inapposite because they rely upon a distinction between substantive and procedural law. The Kentucky statute, however, poses no such problem because it is unequivocal on its face. Having abolished the cause of action completely, the Kentucky statute extinguishes the government's FMCRA claim.

### III.

Since the Supreme Court announced, in *Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), that there are no federal general substantive rules of common law which either the Congress or federal courts can make applicable in a state, federal courts have grappled with whether a particular rule of law falls within the procedural or substantive category.

■ However, we need not determine whether Kentucky's statute is procedural or substantive since the government's right to recover is subject to the statutory condition precedent of the existence of "circumstances creating tort liability upon some third person." 42 U.S.C. § 2651(a). The government's independent right of recovery, therefore, is not independent in the sense that it is based upon a separate pecuniary loss distinct from Troxell's right to recover under a state law cause of action in tort. Instead, the FMCRA only confers a right of recovery when a beneficiary is injured by conduct which subjects the third-party actor to tort liability to the beneficiary. In essence, the government stands in a position similar to that of a subrogee to the state law claim of the beneficiary against the tortfeasor. In that regard, we agree with the reasoning of the Third Circuit in *Heusle v. Nat'l Mut. Ins. Co.,* 628

---

**10.** *See Gillis v. Farmers Union Oil Co.,* 186 F.Supp. 331, 338 (D.N.D.1960) (injured member of armed forces of United States could recover from negligent defendant the reasonable value of medical services without charge by government hospital), *appeal dismissed,* 291 F.2d 751 (8th Cir.1961); *United States v. Harleysville Mut.*

*Casualty Co.,* 150 F.Supp. 326 (D.Md.1957) (absent federal legislation, no action can be brought by government against tortfeasor or against tortfeasor's insurance company for services rendered to tort victim).

**11.** H.R. 298, 87th Cong., 1st Sess. § 1(a) (1961).

F.2d 833, 836–38 (3d Cir.1980). *See also United States v. Travelers Indem. Co.,* 729 F.2d 735, 737 (11th Cir.1984). Accordingly, state substantive law is the basis for determining whether tort liability exists for purposes of an FMCRA claim.

Recognizing that the FMCRA looks to state law for a determination of liability, the government nonetheless claims that its independent FMCRA right may not, under any circumstances, be abrogated by state no-fault statutes. To so hold, they argue, would subject the government's right to recover to the vagaries of state law. Arguing that the purpose of the FMCRA was to ensure a uniform federal right of reimbursement, the government contends that allowing state statutes to abrogate the FMCRA would work against Congress' stated purpose.

An interpretation of the FMCRA that would effectively preempt state no-fault statutes, however, would do violence to the states' interests in maintaining a no-fault system. The purpose of most no-fault statutes is to relieve state courts of the burden of litigating the issue of fault in automobile accident cases. The purpose of Kentucky's no-fault legislation, as this court has recognized, is to provide "prompt medical treatment and rehabilitation of the accident victim by providing prompt payment of needed medical care." *United States v. Allstate Ins. Co.,* 754 F.2d 662, 666 (6th Cir. 1985) (quoting Ky.Stat.Rev. § 304.39–010(3)). If the government could preempt the state no-fault laws, it would be necessary to litigate the issue of fault in order to determine whether the third party was negligent. Only after such a determination was made could the government assert its FMCRA claim. While such a result might enhance the government's revenue, it would do damage to the states' interest in providing quick compensation to victims of automobile accidents without having to determine who was at fault. Without any evidence that Congress intended to override such important state interests, we are hesitant to arrive at that conclusion.

Any denial of the government's ability to recover under the FMCRA will result in a subsidy to no-fault insurers since the government will be forced to absorb the costs of medical care for which the insurer would otherwise be liable. As the court recognized in *Heusle,* however, the question of whether the burden of paying medical expenses will be borne by the large group of premium payers or the large group of taxpayers is a question to be determined by Congress. *Heusle,* 628 F.2d at 838. One large group or the other will ultimately be responsible for shouldering the burden. However sympathetic this court may be to the government's predicament, Congress has chosen to subrogate the government's claim only when liability for medical expenses flows from state tort liability. As the Supreme Court recognized in *Standard Oil,* Congress is free to create a new tort action if it chooses. Congress' having acted in such a way as to create a right of recoupment only by reference to preexisting state law precludes this court from creating an independent tort by judicial fiat.

Our remaining inquiry, therefore, is whether there is tort liability under Kentucky law and, specifically, whether Kentucky's no-fault statute has eliminated tort liability for the first $10,000 of medical expenses.

### IV.

In states in which the legislature has completely abolished tortfeasor liability, courts have recognized that no FMCRA right exists. *United States v. Dairyland Ins. Co.,* 674 F.2d 750 (8th Cir.1982); *Hohman v. United States,* 628 F.2d 832 (3d Cir.1980). Some states like Kentucky, however, have adopted modified no-fault statutes which limit the right to sue in tort until a monetary threshold or particular injury requirement is met. Below the threshold, no tort liability exists; above the threshold, the concept of fault and attendant tort liability remains intact. It is unclear, though, whether the entire scope of tort liability is limited to the extent that no recovery may be had for the first $10,000 or whether liability for the first $10,000 is completely abolished. Upon a careful read-

ing of the Kentucky statute, we conclude that, for the first $10,000 of medical recovery, the Kentucky statute abolishes tort liability.

Two factors lead us to this conclusion. The first and most obvious factor is the clear language of the statute, itself:

> Tort liability with respect to accidents occurring in this Commonwealth and arising from the ownership, maintenance, or use of a motor vehicle is "abolished" for damages because of bodily injury, sickness or disease to the extent the basic reparation benefits provided in this subtitle are payable therefor....

Ky.Rev.Stat. § 304.39–060(2)(a) (Baldwin 1988). The statute clearly speaks in terms of tort liability (not tort damages), which is abolished and not limited. Second, in upholding the validity of this section against attack under section 54 of the Kentucky Constitution, the only impediment to Kentucky's right to abolish tort liability, the highest court of Kentucky held that when one fails to opt out of the no-fault system, one impliedly waives one's right to the protections of section 54. Implicit in this holding is the conclusion that where a person waives his rights under section 54, the legislature may choose to eliminate tort liability. It is apparent that Kentucky's legislature chose to abolish any right of action for those who elect to participate in the no-fault system, at least to the extent of the first $10,000 of medical expenses.

We also believe that it is irrelevant to the disposition of this case that Troxell may have been in a position to pursue a cause of action alleging non-economic injuries in excess of $10,000. The government's reliance upon cases that so hold, to the extent that they do indeed hold, is, therefore, misplaced. Troxell's economic loss, in terms of medical expenses, did not reach the level of Kentucky's threshold. To allow the government to proceed with its FMCRA claim based upon the premise that Troxell might have a cause of action under state law is too speculative and we decline to decide this issue in the abstract. The FMCRA explicitly states that the government may recover where there is tort liability under state law, not the possibility of tort liability under state law. Since Troxell is now completely barred from suit against the tortfeasor, the government similarly has no FMCRA cause of action against the tortfeasor.

The government also contends that Kentucky's no-fault statute merely limits rather than abolishes tort liability. First, the government argues that the conduct that caused Troxell's injury continues to be tortious and that tort consequences continue to flow from this act. In short, the government argues that for every wrong there is a right, even though that right does not vest for some portion of the wrong. To this we respond that when the state government abolishes a right, albeit only to the extent of the first $10,000 of medical expenses, it similarly abolishes the wrong.

Second, the government maintains that the Kentucky statute only limits rather than abolishes tort liability and, therefore, its FMCRA right is not abrogated. In support of this argument, the government relies upon *Fann v. McGuffey*, 534 S.W.2d 770 (Ky.1975). While it is true that the court in *Fann* said that the Act "limits rather than abolishes tort liability," *id.* at 23, the government's reliance upon this statement is misplaced. The Kentucky statute is, in essence, a limitation of choice, not of right. If an individual rejects the statutory scheme, liability remains unaffected. Within the no-fault system, however, tort liability is abolished except for those individuals whose injuries require medical treatment in excess of $10,000. Since individuals have the choice of rejecting or accepting the state's statutory scheme, an individual's right is in no sense abolished although tort liability is, in some sense, limited. However, if an individual chooses to participate in the no-fault system, and to reap the attendant benefits, all tort liability is abolished for the first $10,000 of medical recovery.

V.

Having concluded that Kentucky's no-fault provision abolishes liability for the first $10,000 of medical recovery, it follows

that the government is precluded from asserting a claim under the FMCRA. The judgment of the district court is affirmed.