Yolanda GORMAN, Petitioner,

v.

Janice K. TUCKER, By and Through her legal guardians and next friends, Beverly A. EDWARDS and Dean E. Edwards, Respondents.

No. 97SC447.

Supreme Court of Colorado,
En Banc.

July 6, 1998.

Rehearing Denied Aug. 10, 1998.

Rodman & Ross–Shannon, John R. Rodman, Raymond J. Lego, Denver, for Petitioner.

The Law Firm of Michael S. Porter, Michael S. Porter, Wheat Ridge, for Respondents.

Gale A. Norton, Attorney General, Martha Phillips Allbright, Chief Deputy Attorney General, Richard A. Westfall, Solicitor General, Hugo Teufel, Deputy Solicitor General, Andrew P. McCallin, Special Assistant Attorney General, Office of the Attorney General Section, Denver, for Amicus Curiae State of Colorado.

Justice MULLARKEY delivered the Opinion of the Court.

We granted certiorari in *Tucker v. Gorman*, 944 P.2d 653 (Colo.App.1997), to review the court of appeals' decision reversing the trial court's determination that a state department can be reimbursed for expenditures it made under the Colorado Medical Assistance Act (CMAA), *see* §§ 26–4–101 to –904, 8 C.R.S. (1997), only if the defendant is legally liable to the recipient of Medicaid payments.[1] In reversing the trial court, the court of appeals held that the comparative negligence statute, *see* § 13–21–111, 5 C.R.S. (1997), does not bar recovery by the state under the CMAA. We now affirm.

## I.

In the early morning hours of October 17, 1992, the recipient, Janice K. Tucker (Tucker), was an inebriated pedestrian who was struck by a car driven by the defendant, Yolanda Gorman. Tucker sustained serious injuries, and as a result, the Colorado Department of Health Care Policy and Financing (Department)[2] paid Medicaid benefits on her behalf totaling $69,222.82. Subsequently, Tucker filed two types of claims against the defendant. First, she sued in her personal capacity alleging negligence and negligence per se. Second, as the assignee of the Department[3], she sought reimbursement of the Department's Medicaid payments. In a pre-trial ruling, the Jefferson County District Court (trial court) held that the Department's CMAA claim was recoverable against the defendant only if the defendant was liable to the Medicaid recipient pursuant to the comparative negligence statute.

After Tucker's personal claims were dismissed, the case proceeded to trial on the Department's CMAA claim, and the jury returned a verdict finding that Tucker personally was 70% negligent and the defendant

---

1. We granted certiorari on the following issue:

   Whether the court of appeals erred in concluding that the comparative negligence statute has no application to the state's right of recovery under the Colorado Medical Assistance Act, and that the state's right to recover is not to be tested by the Medicaid recipient's right to recover.

2. Currently, the Department is the state agency designated to implement the CMAA. *See* § 25.5–1–201(1)(c), 8 C.R.S. (1997).

3. In the assignment agreement, the Department was to receive 40% of the net recovery of Tucker's action, but not exceeding benefits paid by the Department on behalf of Tucker.

was 30% negligent. In accordance with its pre-trial ruling, the trial court then entered judgment for the defendant.

The court of appeals reversed and held that the CMAA creates an independent right of action in the Department that cannot be defeated by the negligence of the recipient. However, the court of appeals also determined that section 13–21–111.5(1), 5 C.R.S. (1997), specifically limits the liability of any defendant to an amount not "greater than that represented by the degree or percentage of the negligence or fault attributable to such defendant," and held the defendant liable for 30% of the Department's expenditures.

## II.

■ Before considering the substantive issue raised by the defendant, we will summarize briefly the principles that guide our analysis. Interpretation of a statute is a question of law, and an appellate court is not bound by the trial court's interpretation. *See Fogg v. Macaluso,* 892 P.2d 271, 273 (Colo.1995). In construing statutory provisions, our obligation is to give full effect to the legislative intent. *See Colby v. Progressive Cas. Ins. Co.,* 928 P.2d 1298, 1302 (Colo. 1996). If the legislative intent is conveyed by the commonly understood and accepted meaning of the statutory language, we look no further. *See id.* However, if the statutory language is ambiguous, we look to principles of statutory construction to ascertain legislative intent. *See* § 2–4–203(1)(a)–(g), 1 C.R.S. (1997). A statute must be read and considered as a whole and should be construed to give consistent, harmonious, and sensible effect to all of its parts. *See Brooke v. Restaurant Servs., Inc.,* 906 P.2d 66, 70 (Colo.1995). With this background in mind, we now address the arguments raised by the parties.

■ Title XIX of the Social Security Act authorizes federal grants to states to help provide medical assistance to the poor and indigent. *See* 42 U.S.C. § 1396 (1994); § 26–4–102, 8 C.R.S. (1997). To qualify for these Medicaid funds, a state plan must provide that the administering agency will take reasonable measures to ascertain the legal liability of third parties and to seek reimbursement from such third parties for any medical assistance paid to recipients. *See* 42 U.S.C. § 1396a(a)(25) (1994).

As part of this cooperative effort, the CMAA provides the Department with an independent right of action for recovery of medical benefits paid to a recipient for which a third party is liable. *See* § 26–4–403, 8 C.R.S. (1997). Under this section, the Department may assign its claim to the recipient. *See id.* Section 26–4–403(3) provides in part:

> If medical assistance is furnished to or on behalf of a recipient pursuant to the provisions of this article for which a third party is liable, the state department has an enforceable right against such third party for the amount of such medical assistance.... Whenever the recipient has brought or may bring an action in court to determine the liability of the third party, the state department, without any other name, title, or authority to enforce the state department's right, may enter into appropriate agreements and assignments of rights with the recipient and the recipient's attorney, if any.... *The contributory negligence of the recipient shall not be imputed to the state department.*

(Emphasis added.)

Additionally, section 26–4–403(4) provides the Department with an automatic lien for its medical expenditures. *See id.* Section 26–4–403(4) states:

> (a) When the state department has furnished medical assistance to or on behalf of a recipient pursuant to the provisions of this article for which a third party is liable, the state department shall have an automatic statutory lien for all such medical assistance.
>
> . . . .
>
> (e) *The state department's right to recover under this section is independent of the recipient's right. The contributory negligence of the recipient shall not be imputed to the state department.*

(Emphasis added.)

■ The defendant argues that the language relating to third party liability in sub-

sections (3) and (4)(a) of section 26–4–403 and in a regulation[4] specifically limits the Department's claim to situations in which a Medicaid recipient is injured by conduct which subjects the tortfeasor to "legal liability."[5] The defendant argues that "legal liability" must be determined by reference to the comparative negligence statute. The defendant asserts that she is not legally liable to the Department because Tucker's comparative negligence was 70%. *See* § 13–21–111, 5 C.R.S. (1997).[6] Under the defendant's theory, she would be required to reimburse 100% of the Department's Medicaid expenditures only if she was found to be more than 50% at fault. We reject this argument.

Construing the CMAA language relating to third party liability as allowing the comparative negligence statute to bar the Department's claim would negate the CMAA's non-imputation language. After all, the CMAA explicitly states that the recipient's negligence "shall not be imputed to the state department." *See* § 26–4–403(3), (4). "Imputed" means "attributed vicariously ... not because he is personally ... responsible for it [the imputed action]." *See* Black's Law Dictionary 682 (5th ed.1979). Applying the comparative negligence statute would result in the recipient's negligence barring the Department's claim and would impute the recipient's negligence to the Department, a state entity that had no negligence in the car accident underlying this case.

We can give meaning to all parts of the CMAA by recognizing that the CMAA language relating to third party liability is general in nature and the CMAA's more specific non-imputation language controls. The third party liability language does not specifically define when a third party is liable for purposes of the CMAA. Contrary to the defendant's interpretation, the clear and explicit language of subsections (3) and (4)(e) in section 26–4–403 emphasizes the Department's independent right to recover by stating:

> The contributory negligence of the recipient shall not be imputed to the state department.

By using this mandatory language, the General Assembly explicitly prohibited the consideration of the recipient's liability in the determination of whether a negligent third party is liable to the Department. *See People v. Guenther*, 740 P.2d 971, 975 (Colo.1987) (stating the word "shall" involves a mandatory connotation and is the antithesis of discretion). To the extent that there is any possible conflict between the general language of third party liability and the specific language concerning the Department's independent right to recover its Medicaid expenses in subsections (3) and (4) of section 26–4–403, the latter provisions must prevail. *See* § 2–4–205, 1 C.R.S. (1997); *M.S. v. People*, 812 P.2d 632, 637 (Colo.1991).

The defendant cites *Dewey v. Hardy*, 917 P.2d 305, 310 (Colo.App.1995), for the proposition that the Department cannot recover unless the third party is found liable to the recipient under the comparative negligence statute. In *Dewey*, the court of appeals held that a solatium award pursuant to section 13–21–203.5, 6A C.R.S. (1994 Supp.) (solatium statute), did not apply unless the defendants were at least 51% liable under the comparative negligence statute. *See id.* However, the court of appeals also held that once the

---

**4.** 10 CCR 2505–10 § 8.061.20 (1981) provides:

RIGHT OF RECOVERY IN THIRD PARTY LIABILITY CASES: Section 26–4–112(3), C.R.S. (1973) [predecessor to C.R.S. 26–4–403] as amended, establishes the State Department's right to recover the cost of medical care provided to an eligible medicaid recipient when a third party is liable.

**5.** Section 26–4–103(9) defines "liability" for the CMAA:

"Liable" or "liability" means the legal liability of a third party, either by reason of judgment, settlement, compromise, or contract, as the result of negligent acts or other wrongful acts or otherwise for all or any part of the medical

cost of an injury, a disease, or the disability of an applicant for or recipient of medical assistance.

**6.** Section 13–21–111(1), 5 C.R.S. (1997) reads:

Contributory negligence shall not bar recovery in any action by any person or his legal representative to recover damages for negligence resulting in death or in injury to person or property, if such negligence was not as great as the negligence of the person against whom recovery is sought, but any damages allowed shall be diminished in proportion to the amount of negligence attributable to the person for whose injury, damage, or death recovery is made.

solatium statute applied, the solatium award was exempt from the reduction mandated by the comparative negligence statute because the solatium statute was more specific than the general comparative negligence statute. *See id.* We find *Dewey* inapposite and reject the defendant's argument because section 13–21–203.5 [7] does not contain any nonimputation language similar to that found in the CMAA. Contrary to the defendant's contention, *Dewey* stands for the proposition that a more specific statute, like the CMAA, controls over the general comparative negligence statute. *See id.*

■ Moreover, section 26–4–403 was revised and reenacted in 1991, *see* ch. 290, sec. 1, § 26–4–403, 1991 Colo. Sess. Laws 1788, 1801,[8] while the comparative negligence statute was originally enacted in 1971, *see* ch. 125, sec. 1, § 41–2–14, 1971 Colo. Sess. Laws 496. Given the sequence of legislation, the General Assembly is presumed to have had knowledge of the then twenty-year-old comparative negligence statute when it enacted section 26–4–403 and stated in such strong terms that the recipient's negligence shall not be imputed to the Department. *See Ingram v. Cooper*, 698 P.2d 1314, 1316–17

(Colo.1985) (holding that the General Assembly is presumed to be knowledgeable of existing laws and statutes at the time it enacts a particular statute). We note that to the extent that there is a conflict between two statutes, the last in time controls. *See* § 2–4–206, 1 C.R.S. (1997); *Public Employees Retirement Ass'n v. Nichols*, 200 Colo. 328, 330, 615 P.2d 657, 658 (1980).

Our interpretation is consistent with CMAA subsections (8) [9], (9) [10], and (10)(c) [11] of section 26–4–403, 5 C.R.S. (1997), which evidence the independent nature of the Department's right of recovery under the CMAA. Section 26–4–403(8) specifically excludes the application of any prohibitions on recovery in the Colorado Auto Accident Reparations Act. Subsections (9) and (10)(c) of section 26–4–403 also emphasize the independent nature of the Department's claim by providing that any action taken by the Department against a negligent third party shall not impair the recipient's right to proceed against the third party.

■ Finally, the defendant contends that courts in other jurisdictions interpreting the

---

**7.** Section 13–21–203.5 provides:

> In any case arising under § 13–21–202, the persons entitled to sue under the provisions of § 13–21–201(1) may elect in writing to sue for and recover a solatium in the amount of fifty thousand dollars. Such solatium amount shall be in addition to economic damages.... Such solatium amount shall be in lieu of noneconomic damages recoverable under § 13–21–203 and shall be awarded upon a finding or admission of the defendant's liability for the wrongful death.

**8.** The General Assembly first enacted the Medicaid reimbursement recovery provision in 1977. *See* ch. 372, sec. 5, § 26–4–112(3), 1977 Colo. Sess. Laws 1351, 1354. This provision was amended in 1988 to include language that the "contributory negligence of the applicant or recipient shall not be imputed to the state department." *See* ch. 216, sec. 1, § 26–4–112(3.1)(e), 1988 Colo. Sess. Laws 1064, 1065. In 1991, the General Assembly revised and reenacted the CMAA and moved this provision to section 26–4–403. *See* ch. 290, sec. 1, § 26–4–403, 1991 Colo. Sess. Laws 1788, 1801. None of the parties has pointed us to any legislative history regarding this provision and our own research has disclosed nothing relevant.

**9.** Section 26–4–403(8) provides:

> Nothing in the "Colorado Auto Accident Reparations Act", part 7 of article 4 of title 10, C.R.S., shall be construed to limit the right of the state department to recover the medical assistance furnished to or on behalf of a recipient as the result of the negligence of a third party.

**10.** Section 26–4–403(9) states:

> No action taken by the state department pursuant to subsection (3) of this section or any judgment rendered in such action shall be a bar to any action upon the claim or cause of action of the applicant or recipient or his guardian, personal representative, estate, dependent, or survivors against the third party having legal liability, nor shall any such action or judgment operate to deny the applicant or recipient the recovery for that portion of his medical costs or other damages not provided as medical assistance under this article.

**11.** Section 26–4–403(10)(c) reads:

> No action taken by the county or state department pursuant to this subsection (10) or any judgment rendered in such action or proceeding shall be a bar to any action upon the claim or cause of action of the recipient or his guardian, personal representative, estate, dependent, or survivors against the trustee or person holding the power of attorney.

analogous federal statute under the Federal Medical Care Recovery Act (FMCRA), *see* 42 U.S.C. § 2651(a) (1994), have rejected the approach of the court of appeals. We find these authorities [12] inapplicable because the federal statute is very different from the state statute at hand. 42 U.S.C. § 2651(a) reads:

> In any case in which the United States is authorized or required by law to furnish hospital, medical, surgical, or dental care and treatment ... to a person who is injured or suffers a disease, after the effective date of this Act, *under circumstances creating a tort liability upon some third person ... to pay damages therefor,* the United States shall have a right to recover from said third person the reasonable value of the care and treatment so furnished or to be furnished and shall, *as to this right be subrogated to any right or claim* that the injured or diseased person ... has against such third person....

(Emphasis added.) Specifically, the federal statute lacks any non-imputation language regarding the negligence of the recipient, and, more importantly, explicitly states that the government's right is subrogated to the recipient's right. We recognize that the General Assembly may have extended Medicaid recovery beyond the requirements of the federal law; however, it is not prevented from doing so when its laws do not contravene federal law.

Because the Department assigned its claim to Tucker, the court of appeals was correct in holding that the comparative negligence statute did not bar the CMAA reimbursement claim. *See In re Marriage of Lipira,* 621 P.2d 1390, 1391 (Colo.App.1980) (stating assignee takes rights of assignor).

## III.

The State of Colorado (State) argues in its brief as amicus curiae that the court of appeals erred in reducing the Department's recovery by applying section 13–21–111.5, 5 C.R.S. (1997).[13] The State argues that section 13–21–111.5 is inapplicable and that a third party who is found to be negligent for any part is liable for all of the Department's Medicaid costs. Under the State's theory, the defendant should have been required to reimburse all of the Medicaid expenditures and not merely 30% of the expenditures as held by the court of appeals. However, Tucker did not petition for rehearing in the court of appeals or cross-petition for writ of certiorari.

We will not consider issues raised only by amicus curiae and not by the parties. *See Sherman Agency v. Carey,* 195 Colo. 277, 280, 577 P.2d 759, 761 (1978); *see also Eugene Cervi & Co. v. Russell,* 31 Colo.App. 525, 530, 506 P.2d 748, 751 (1972), *aff'd,* 184 Colo. 282, 519 P.2d 1189 (1974). Because this issue was not preserved for our review, we will not address it. *See* C.A.R. 52; *Sherman Agency,* 195 Colo. at 280, 577 P.2d at 761 (holding that, even though the party argued the matter before the court, the court would not consider the issue because the issue was not in petition for rehearing in the court of appeals nor in the petition for certiorari).

## IV.

In conclusion, we hold that the CMAA creates an independent right of recovery of Medicaid expenditures for the Department which is not defeated by the recipient's com-

---

**12.** *See United States v. Trammel,* 899 F.2d 1483, 1488–89 (6th Cir.1990) (holding that the federal government cannot recover under FMCRA where defendant is not liable under the state no-fault act); *Hohman v. United States,* 470 F.Supp. 769, 771 (E.D.Pa.1979) (stating that government's claim is barred because defendant was not liable under the state's no-fault act); *but see United States v. Theriaque,* 674 F.Supp. 395, 398–400 (D.Mass.1987) (holding that state's comparative negligence law was no defense to the federal government's independent right to recover).

**13.** Section 13–21–111.5(1) provides:

> In an action brought as a result of a death or an injury to person or property, no defendant shall be liable for an amount greater than that represented by the degree or percentage of the negligence or fault attributable to such defendant that produced the claimed injury, death, damage, or loss, except as provided in subsection (4) of this section.

parative negligence. Accordingly, we affirm the judgment of the court of appeals.

KOURLIS, J., dissents.

Justice KOURLIS, dissenting:

Because I believe that the CMAA and the comparative negligence statute do not conflict, but rather may be harmonized to give sensible effect to both, I respectfully dissent from the majority's holding.

## I.

Janice Tucker, bearing 70% of the fault for her injuries, stands to gain roughly $12,000 from a person whom Colorado law does not even recognize as liable in tort.

Under the CMAA, the state has a right to reimbursement for Medicaid expenses where a third party is liable for the injuries caused. *See* § 26–4–403(3), 8 C.R.S. (1997). Thus, the state itself may institute proceedings against the third party, or it may assign any portion of its rights to an injured party bringing suit for damages. *See* § 26–4–403(3), 8 C.R.S. (1997). In this manner, the state can recover some of its costs without incurring the expense of pursuing its own lawsuit in situations where a third party is at fault for the indigent person's injuries.

In this case, the state and Tucker negotiated an assignment of the state's Medicaid claim whereby Tucker would receive 60% and the state, 40% of the damages. Tucker then sued Gorman for negligence in her own behalf and also for reimbursement under the Medicaid claim. After dismissal of her personal claims against Gorman, Tucker pursued only the claim based on the Medicaid assignment.

A jury found that Tucker was 70% responsible for the accident, and that Gorman was 30% at fault. The trial court determined that because Gorman was not greater than 50% at fault, as required by the comparative negligence statute, Gorman had no liability

under the Medicaid assignment claim. The court of appeals reversed, holding that the comparative negligence statute did not bar the claim. The court of appeals also applied the pro-rata liability statute to reduce Gorman's liability to 30% of the $70,000 Medicaid bill ($21,000). Thus, Tucker personally will now receive 60% of that award. Had Tucker not been indigent and received Medicaid benefits, Gorman could not have been held liable, and no damages would have been awarded.

As inequitable as this result appears, the majority's holding today opens the door to an even more unjust result whereby a party who is 1% at fault must pay 100% of an indigent person's Medicaid bill to cover injuries for which that indigent person is 99% at fault.[1] *See Colorado State Bd. of Med. Exam'rs v. Saddoris,* 825 P.2d 39, 44 (Colo.1992) (noting that the court should not follow a statutory construction that leads to an absurd result). The majority holds that the language prohibiting the recipient's contributory negligence from being imputed to the state specifically overrides the comparative negligence statute. That statute precludes liability unless a party is at least 51% at fault.

I believe that the two statutes can be harmonized such that once legal liability under the comparative negligence statute is triggered, the CMAA allows 100% recovery to the state.

## II.

As a matter of statutory construction, section 2–4–205, 1 C.R.S. (1997), directs that if a general provision conflicts with a more specific provision, courts are to give effect to both provisions if possible. *See* § 2–4–205, 1 C.R.S. (1997); *Cooley v. Big Horn Harvestore,* 813 P.2d 736, 747 (Colo.1991) (acknowledging that, if possible, courts must seek to harmonize potentially contrasting statutory provisions). It is only when the provisions are irreconcilable that we must construe the specific provision to prevail over the general.

1. I believe the majority's reasoning that the CMAA is more specific and controls over the comparative negligence statute is equally applicable to preclude use of the prorata liability statute, and thus would allow the state to collect 100% of its Medicaid expenditures from a party

who is only 1% at fault. Whether or not it is within the General Assembly's province to shift costs away from the state in this draconian manner, I do not read the provisions of the CMAA as dictating this result.

*See* § 2–4–205, 1 C.R.S. (1997); *Climax Molybdenum Co. v. Walter*, 812 P.2d 1168, 1174 (Colo.1991) (finding that a specific statutory provision controls where two provisions were irreconcilable). Here, the provisions of the CMAA and the comparative negligence statute are easily reconciled so as to give effect to both provisions.

The CMAA provides that the state has an enforceable right against a third party having liability for a Medicaid recipient's injuries. *See* § 26–4–403(3), 8 C.R.S. (1997) ("[T]he attorney general ... may institute and prosecute, or intervene of right in legal proceedings against the third party having legal liability...."). The statute further explicitly provides that the recipient's contributory negligence shall not be imputed to the state. *See* § 26–4–403(3), 8 C.R.S. (1997). The statute is predicated upon "liability" and "legal liability" of a third party, and, in my view, thereby necessarily incorporates principles of tort liability. The CMAA itself defines liability as "the legal liability of a third party ... for all or any part of the medical cost of an injury...." *See* § 26–4–103(9), 8 C.R.S. (1997). Hence, where a party is not legally liable in tort, no liability or legal liability would attach for CMAA purposes nor for any other purposes. This interpretation would give full, sensible and proper effect to the language of both the CMAA and the comparative negligence statute.

The latter part of section 26–4–403(3) regarding contributory negligence becomes operative once it is determined that a party has legal liability, i.e., is at least 51% at fault. At that point, any contributory negligence of the recipient will not be imputed to the state and the state may collect its full reimbursement from the legally liable tortfeasor. Thus, as a preliminary matter, I would construe the two statutes so as to give effect to both.

Additionally, we should contemplate the practical effect of our interpretation. Section 2–4–203(1)(e), 1 C.R.S. (1997), provides that if a statute is ambiguous, we may consider "[t]he consequences of a particular construction." § 2–4–203(1)(e), 1 C.R.S. (1997); *see also Brooke v. Restaurant Servs., Inc.*, 906 P.2d 66, 70 (Colo.1995). The majority's construction creates a situation whereby a person's tort liability becomes divorced from notions of fault and turns solely upon the happenstance of an injured party's financial condition. By contrast, giving effect to both provisions allows us to preserve the tort doctrine of fault and liability while still serving the goal of greater reimbursement to the state as contemplated by the CMAA.

The majority concludes that the General Assembly intended to circumvent the existing comparative negligence statute at the time it enacted section 26–4–403. *See* maj. op. at 1130–1131. I do not agree. If the General Assembly had truly intended to fundamentally alter the common law and legislative scheme of tort liability, it could have done so when it created a definition of legal liability under the CMAA. The General Assembly saw fit to define liability under the CMAA, yet did not include any language modifying the legal definition of tort liability. *See People v. Bergen*, 883 P.2d 532, 547 (Colo.App.1994) (noting that the absence of specific language in a statute indicates an intent not to include the omitted concept). Nor does the definition specifically include the concept of liability to the CMAA rather than to the recipient/injured as would commonly be understood under tort law. *See People v. Guenther*, 740 P.2d 971, 975 (Colo. 1987) (stating that statutory language must be given its commonly accepted and understood meaning).

Instead the General Assembly chose to use language that prevents imputation of contributory negligence to the state in cases where a third party has legal liability. Thus, a threshold finding of legal liability is necessary before the non-imputation language becomes effective.

Tucker makes much of the fact that the CMAA creates an independent right of recovery in the state. The significance of this right is that it ensures that the state has standing and is free to pursue reimbursement of its Medicaid expenses where appropriate. However, this "independent right" is not a separate statutory cause of action unrelated to the attribution of fault. Rather, the fact remains that but for the accident, the state would not have incurred medical expenses. The accident was caused by some

combined negligence of the plaintiff and the defendant. The defendant is *not liable* to the plaintiff unless he or she was more than 50% at fault for the accident, and the defendant should similarly not be liable to the state absent such wrongdoing.

In sum, I agree with the trial judge below that we would create

an unjust result, and one certainly not intended by the legislature, to have a defendant who is not legally responsible, or only partially responsible, reimburse all costs to Medicaid. This would make the government able to recover when the recipient of the Medical funds would not be able to recover in an identical lawsuit. That is simply an untenable position. . . .

### III.

The General Assembly clearly intended to provide greater recovery to the state in the event it incurs unreimbursed medical expenses on behalf of an accident victim. However, that greater right should not be read to supersede clear principles of tort law that provide recovery only where a defendant is more than equally at fault. I would read tort principles into the CMAA and, accordingly, I would reverse the court of appeals and respectfully dissent.