**PACIFIC LIFE & ANNUITY COMPANY, Plaintiff–Appellant,**

v.

**COLORADO DIVISION OF INSURANCE, Defendant–Appellee.**

No. 04CA2169.

Colorado Court of Appeals, Div. II.

Feb. 23, 2006.

As Modified on Denial of Rehearing April 6, 2006.

Certiorari Dismissed June 13, 2006.

Holland & Hart LLP, Jack M. Englert, Jr., Denver, Colorado, for Plaintiff–Appellant.

John W. Suthers, Attorney General, James F. Carr, First Assistant Attorney General, Christine C. Stretesky, Assistant Attorney General, Denver, Colorado, for Defendant–Appellee.

### GRAHAM, J.

In this declaratory judgment action concerning the interpretation of § 10–16–704(3), C.R.S.2005, as to the health insurance benefit level applicable to services provided by out-of-network providers at in-network facilities, plaintiff, Pacific Life & Annuity Company, appeals the trial court's order entered in favor of defendant, Colorado Division of Insurance. We reverse and remand with directions to enter judgment for Pacific Life.

Pacific Life provides health insurance policies in Colorado. Its policies provide two different benefit levels—one for participating providers (in-network) and one for nonparticipating providers (out-of-network). Participating providers offer a discounted rate and are contractually bound not to seek reimbursement from insureds for charges that exceed the contracted rate. Nonparticipating providers do not have a contract with Pacific Life, and therefore, they are not subject to any contractually set cap on the rate charged for their services and may bill insureds directly for the difference between the amount paid to them by the insurer and the amount of their bill of charges (this is known as balance billing). If an insured receives treatment from a participating provider, the insured benefits from both the negotiated discounted rate of that provider and the contractual restriction preventing the provider from seeking recovery from the insured for charges that exceed the contracted rate.

Pacific Life's policy and the insured's identification card notify insureds that they may consult a list of approved providers:

> Preferred providers will not charge you or your enrolled dependents for any balances beyond the deductibles, copays, and percentage payable amounts for covered medical charges. Facilities and professional providers that do not have a preferred provider contract with [Pacific Life] may bill you for any balances over [Pacific Life's] payment level in addition to the deductible, copays, and percentage payable amounts.
>
> . . . .
>
> To locate a preferred provider, call the PPO network . . . .

This case arises out of the situation where an insured receives a covered service at an in-network facility from a nonparticipating provider. The parties agree that this type of situation is governed by § 10–16–704(3). The parties disagree, however, as to the interpretation of that subsection. The relevant

part of § 10–16–704, C.R.S.2005, provides as follows:

(1) A carrier providing a managed care plan shall maintain a network that is sufficient in numbers and types of providers to assure that all covered benefits to covered persons will be accessible without unreasonable delay. In the case of emergency services, covered persons shall have access to health care services twenty-four hours per day, seven days per week. Sufficiency shall be determined in accordance with the requirements of this section and may be established by reference to any reasonable criteria used by the carrier . . . .

(2)(a) In any case where the carrier has no participating providers to provide a covered benefit, the carrier shall arrange for a referral to a provider with the necessary expertise and ensure that the covered person obtains the covered benefit at no greater cost to the covered person than if the benefit were obtained from participating providers. . . .

(3) When a covered person receives services or treatment in accordance with plan provisions at a network facility, the benefit level for all covered services and treatment received through the facility shall be the in-network benefit.

Pacific Life argues that § 10–16–704(3) unambiguously provides that, if an insured receives services from a nonparticipating provider at an in-network facility, the insured, and not the insurer, must bear the difference between the nonparticipating provider's charges and the in-network benefit rate for the same service. The Division argues that the insurer must bear that difference.

After the Division threatened to commence administrative action against Pacific Life if it failed to follow the Division's interpretation of the statute, Pacific Life filed a complaint seeking a declaratory judgment that § 10–16–704(3) limits its obligation to reimburse a nonparticipating provider for services performed at a network facility to the in-network benefit level, leaving the insured to pay the balance of the nonparticipating provider's bill.

After a hearing, the trial court adopted the Division's construction of § 10–16–704(3) and ruled that insurers must pay covered benefits to insureds who receive services at an in-network facility from a nonparticipating provider at no greater cost to the insured than if the benefit were obtained from a participating provider. The trial court concluded that the term "benefit" as used in § 10–16–704(3) refers to "the benefit level received by a covered person," and not "the benefit level rate that has to be paid [to the provider] by the carrier." The court concluded that insurers, not insureds, are responsible to pay the balance of the nonparticipating provider's bill. It denied Pacific Life's motion for declaratory judgment and dismissed its complaint.

■ Pacific Life contends that the trial court erred in its interpretation of § 10–16–704(3). We agree.

Interpretation of a statute is a question of law, and an appellate court is not bound by the trial court's interpretation. In construing statutory provisions, our obligation is to give full effect to the legislative intent. If the legislative intent is conveyed by the commonly understood and accepted meaning of the statutory language, we look no further. A statute must be read and considered as a whole and should be construed to give consistent, harmonious, and sensible effect to all its parts. *Gorman v. Tucker,* 961 P.2d 1126 (Colo.1998).

■ Although we give deference to an agency's interpretation of the statutes governing that agency, we review the statutory language as a matter of law, and we are not bound to give deference to a misinterpretation of those statutes. *See Colo. Div. of Employment & Training v. Parkview Episcopal Hosp.,* 725 P.2d 787 (Colo.1986); *ABC Disposal Servs. v. Fortier,* 809 P.2d 1071 (Colo.App.1990).

Section 10–16–704 provides a scheme for the payment of benefits to an insured under managed health care. The benefit level an insured receives under § 10–16–704 depends on whether there is an adequate network available to the insured and whether the insured receives services from a participating provider or a nonparticipating provider. The

statute requires a carrier providing a managed care plan to maintain "a network that is sufficient in numbers and types of providers to assure that all covered benefits to covered persons will be accessible without unreasonable delay." Section 10–16–704(1). Section 10–16–704(2)(a) provides that if the insurer has no participating providers to provide a covered benefit, the carrier shall arrange for a referral to a provider with the necessary expertise and ensure that the covered person obtains the covered benefit at no greater cost to the covered person than if the benefit were obtained from participating providers.

However, if there is a participating provider within a reasonable distance from the insured's geographic area, and the insured "knowingly seeks services from a nonparticipating provider," the insurer is responsible to pay the lesser of the provider's bill of charges, a negotiated rate, or the "greater of the health maintenance organization's average in-network rate for the relevant geographic area or the usual, customary, and reasonable rate for such geographic area." Section 10–16–704(2)(i)(I), C.R.S.2005. If the reimbursement rate described above is not equal to the nonparticipating provider's bill of charges, the nonparticipating provider may balance bill the insured. Section 10–16–704(2)(k), C.R.S.2005.

In their briefs, both parties acknowledge that, in the case of an adequate network, that is, where preferred providers are available to the insured consumer, there is no requirement that an insurer pay the insured a benefit other than the capped rate which other participating providers charge and no requirement that an insurer reimburse a nonparticipating provider at any amount other than the capped rate applicable to participating providers. The parties also agree that, when a network is inadequate because there are no participating providers available, the insurer must "ensure that the covered person obtains the covered benefit at no greater cost to the covered person than if the benefit were obtained from participating providers." Section 10–16–704(2)(a).

At issue here is the meaning of § 10–16–704(3), which provides that "[w]hen a covered person receives services or treatment in accordance with plan provisions at a network facility, the benefit level for all covered services and treatment received … shall be the in-network benefit."

The Division argues that when an insured receives treatment at a network facility from a provider other than a participating provider, unless the insurer directs the insured to a participating provider at the facility, the insured does not "have an opportunity to select" a participating provider and the network facility is inadequate. According to the Division, even where preferred providers are present in the facility, it is a fallacy to assume that they are available to the insured. Instead, the insurer must in effect assign a preferred provider from the staff of providers. If it does not, then the Division considers the facility to be "inadequate." However, the stipulated and assumed facts which were presented in this declaratory judgment action led the trial court to conclude that the in-network facilities were adequate.

The trial court analyzed § 10–16–704(3) under the assumption that Pacific Life's in-network facilities were staffed with both participating and nonparticipating providers and stated: "[I]n an area where there is (3)27 an adequate network, that's essentially [an issue involving §10-16-704(3)]." Further, the Division has acknowledged that Pacific Life's network had on staff participating providers and has only questioned whether insureds knew about the availability of those providers. Thus, we conclude that the Division's argument -- namely, that the in-network facilities did not provide an adequate network of participating providers-- is not supported by any showing in the record that the in-network facilities were not adequate.

We also conclude that under § 10-16-704(1), an in-network facility is adequate where there are participating and nonparticipating providers. We believe this conclusion is consistent with the assumptions the parties relied upon when they sought a declaration of the meaning of the statutory scheme.

The Division also relies on the distinction between the terms "benefit" and "rate" to support its statutory construction of § 10–

16–704(3). According to the Division, the term "benefit" means that which the insured receives through his or her insurance policy and the amount the insured is responsible to pay, but does not mean the rate that the insurance carrier pays to the provider. We do not agree.

We conclude that the term "benefit" in § 10–16–704(3) refers to the amount an insurer pays for a given treatment or service, whether it reimburses the insured or pays the provider on behalf of the insured. Section 10–16–704(3) does not differentiate between services provided by participating providers and nonparticipating providers at in-network facilities. To the contrary, it states that, when an insured receives "services or treatment in accordance with plan provisions at a network facility, the benefit level for *all* covered services and treatment received through the facility shall be the in-network benefit." Section 10–16–704(3) (emphasis added). Under the plain language of the statute, when an insured receives treatment from a nonparticipating provider at an in-network facility, the insurer's payment of benefits is limited to the in-network benefit.

Under the plain language of § 10-16-704, when an insured receives care or treatment from a nonparticipating provider at an in-network facility, there is no negotiated rate and the nonparticipating provider is under no contractual obligation to charge a rate other than his or her normal rate. In accordance with § 10-16-704(2)(c)(III), C.R.S. 2005, the nonparticipating provider remains entitles to balance bill. In those circumstances, the "benefit" is based on the agreement between the insurer and the insured. If for example, the policy states that the insurer will pay only a portion of a participating provider's charges, then the insurer must pay that same portion of a nonparticipating provider's charges.

The insured is responsible to pay the nonparticipating provider for the difference between the contracted, in-network benefit rate and the provider's charges. This construction of § 10–16–704(3) gives sensible, consistent, and harmonious effects to all parts of § 10–16–704. *See Gorman v. Tucker, supra.*

Our statutory interpretation is strengthened by the fact that § 10–16–704(2)(a) provides that "where the carrier has no participating providers to provide a covered benefit, the carrier shall arrange for a referral to a provider ... and ensure that the covered person obtains the covered benefit at no greater cost ... than if the benefit were obtained from participating providers." This language is not contained in § 10–16–704(3), the subsection at issue here. Therefore, we read no such requirement into that subsection. *See Eichhorn v. Kelley*, 56 P.3d 124, 126 (Colo.App.2002) ("The inclusion of certain items implies the exclusion of others."); *cf. Beeghly v. Mack*, 20 P.3d 610 (Colo.2001) (where the legislature specifically included a default provision in one statute, but did not include such a provision in another, the default provision could not be read into the latter statute).

Section 10–16–704(3) mandates that an insurer pay to an insured only in-network benefits for all services performed at an in-network facility. It does not require that the insurer pay the nonparticipating provider's balance bill to shield the insured from making a payment above what it would make to a participating provider.

We therefore conclude the trial court erred in entering a declaratory judgment for the Division and in dismissing the action filed by Pacific Life.

The judgment is reversed, and the case is remanded to the trial court with directions to enter judgment for Pacific Life.

Judge ROTHENBERG and Judge CARPARELLI concur.